Jerry W. MARKHAM and Marcia J.
Harris, a/k/a Marcia Markham,
Appellants,

v.

COLONIAL MORTGAGE SERVICE CO.,
ASSOCIATES, INC., et al.

No. 78–1616.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 28, 1979.

Decided Aug. 2, 1979.

Jerry W. Markham, pro se.

Irving Kator, Washington, D. C., for appellee, Illinois Federal Service Savings and Loan Ass'n.

Matthew A. Kane, Washington, D. C., was on brief, for appellee, B. W. Real Estate, Inc.

Douglas L. Parker, Washington, D. C., was on brief, for amicus curiae, Consumer Federation of America urging reversal.

Drew S. Days III, Asst. Atty. Gen., Dept. of Justice, Earl J. Silbert, U. S. Atty., Walter W. Barnett and Cynthia L. Attwood, Attys., Dept. of Justice, Washington, D. C., were on brief, for amicus curiae, United States urging a remand.

Before WRIGHT, Chief Judge, SWYGERT, Circuit Judge,[1] and ROBB, Circuit Judge.

Opinion for the court filed by SWYGERT, Circuit Judge.

SWYGERT, Circuit Judge.

The Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, *et seq.*, prohibits creditors from discriminating against applicants on the basis of sex or marital status. We are asked to decide whether this prohibition prevents creditors from refusing to aggregate the incomes of two unmarried joint mortgage applicants when determining their creditworthiness in a situation where the incomes of two similarly situated married joint applicants would have been aggregated. The plaintiffs in this action, Jerry and Marcia Markham, appeal the judgment of the district court granting defendant Illinois Federal Service Savings and Loan Association's motion for summary judgment. We reverse. The plaintiffs also appeal the judgment of the district court granting a motion for summary judgment on behalf of defendants Colonial Mortgage Service Co. Associates, Inc., Al Shoemaker, and B.W. Real Estate, Inc. As to this matter, we affirm.

I

In November 1976, plaintiffs Marcia J. Harris[2] and Jerry Markham announced their engagement and began looking for a residence in the Capitol Hill section of Washington, D.C. One of the real estate firms which they contacted, defendant B.W. Real Estate, Inc., found suitable property for them, and in December 1976, Markham and Harris signed a contract of sale for the property.

---

1. The Honorable Luther M. Swygert of the United States Court of Appeals for the Seventh Circuit is sitting by designation.

2. Plaintiffs were married on April 9, 1977, and the complaint was amended to reflect the name change of Marcia Harris.

Upon the recommendation of B.W. Real Estate, plaintiffs agreed to have defendant Colonial Mortgage Service Co. Associates, Inc. (Colonial Mortgage) conduct a credit check. Plaintiffs subsequently submitted a joint mortgage application to Colonial Mortgage, who in turn submitted it to Colonial Mortgage Service Company (Colonial-Philadelphia), a business entity located in Philadelphia and not a party to this action.

In March 1976, Colonial-Philadelphia had entered into an agreement with defendant Illinois Federal Service Savings and Loan Association (Illinois Federal), whereby Illinois Federal agreed to purchase certain mortgages and trust deeds offered it by Colonial-Philadelphia. Pursuant to this agreement, Colonial-Philadelphia offered plaintiffs' mortgage application to Illinois Federal.

Plaintiffs and B.W. Real Estate had decided that February 4, 1977 would be an appropriate closing date for the purchase of the Capitol Hill residence. Accordingly, plaintiffs arranged to terminate their current leases, change mailing addresses, and begin utility service at the new property. On February 1, the loan committee of Illinois Federal rejected the plaintiffs' application. On February 3, the eve of the settlement date, plaintiffs were informed through a B.W. Real Estate agent that their loan application had been denied because they were not married. They were advised that their application would be resubmitted to the "investor"—who was not identified—on February 8, but that approval would be contingent upon the submission of a marriage certificate.

On February 8, the Illinois Federal loan committee reconsidered the plaintiffs' application, but again denied it. A letter was sent that date from Illinois Federal to Colonial-Philadelphia, which letter stated that the application had been rejected with the statement: "Separate income not sufficient for loan and job tenure."

On February 9, 1977 plaintiffs filed this suit, alleging violation of the Equal Credit Opportunity Act. After the district court separately granted the motions of Illinois Federal and the other defendants for summary judgment on May 25, 1978, plaintiffs brought this appeal.

II

A.

◼ We address first the appeal from the district court's summary judgment entered in favor of Illinois Federal. The district court concluded as a matter of law that plaintiffs could not state a claim under the Equal Credit Opportunity Act even if they showed that Illinois Federal's refusal to aggregate their incomes resulted, in whole or in part, in the denial of their loan application. This conclusion was based on the premise that creditors need not ignore the "special legal ties created between two people by the marital bond." It was the court's conclusion that under Illinois law [3] the mere fact of marriage provides creditors with greater rights and remedies against married applicants than are available against unmarried applicants. Presumably the district court believed that this excused Illinois Federal under 15 U.S.C. § 1691d(b), which allows a creditor to take "[s]tate property laws directly or indirectly affecting creditworthiness" into consideration in making credit decisions.

We fail to see the relevance of any special legal ties created by marriage with respect to the legal obligations of joint debtors. This was not an instance where a single person is applying for credit individually and claiming income from a third party for purposes of determining creditworthiness. In such an instance, the absence of a legal obligation requiring continuance of the income claimed by the applicant from the third party would reflect on the credit applicant's creditworthiness. Inasmuch as the Markhams applied for their mortgage

---

**3.** The district court referred explicitly to Illinois law, although it is questionable whether the applicable law is that of Illinois or the District of Columbia. We have not been asked to decide that question, however, and in view of the fact that the law in both jurisdictions is in relevant part substantially the same, we need not decide it.

jointly, they would have been jointly and severally liable on the debt. Each joint debtor would be bound to pay the full amount of the debt; he would then have a right to contribution from his joint debtor. *See* 4 A. Corbin, *Contracts* §§ 924, 928 (1951). *See also Clayman v. Goodman Properties, Inc.,* 171 U.S.App.D.C. 88, 518 F.2d 1026 (1973); *Welch v. Sherwin,* 112 U.S.App.D.C. 124, 300 F.2d 716 (1962); Ill. Ann.Stat. ch. 76, § 3 (Smith-Hurd). While it may be true that judicially-enforceable rights such as support and maintenance are legal consequences of married status, they are irrelevancies as far as the creditworthiness of joint applicants is concerned. Illinois Federal would have had no greater rights against the Markhams had they been married, nor would the Markhams have had greater rights against each other on this particular obligation. Thus, inasmuch as the state laws attaching in the event of marriage would not affect the creditworthiness of these joint applicants, section 1691d(b) may not be used to justify the refusal to aggregate the plaintiffs' incomes on the basis of marital status.

### B.

■ We turn to a consideration of whether the Equal Credit Opportunity Act's prohibition of discrimination on the basis of sex or marital status makes illegal Illinois Federal's refusal to aggregate plaintiffs' income when determining their creditworthiness. Illinois Federal contends that neither the purpose nor the language of the Act requires it to combine the incomes of unmarried joint applicants when making that determination.

We start, as we must, with the language of the statute itself. *March v. United States,* 165 U.S.App.D.C. 267, 274, 506 F.2d 1306, 1313 (1974). 15 U.S.C. § 1691(a) provides:

> It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction—
>
>> (1) on the basis of . . . sex or marital status

. . . . .

This language is simple, and its meaning is not difficult to comprehend. Illinois Federal itself has correctly phrased the standard in its brief: The Act forbids discrimination "on the basis of a person's marital status, that is, to treat persons differently, all other facts being the same, because of their marital status . . . ." Brief for Defendant Illinois Federal at 18. Illinois Federal does not contend that they would not have aggregated plaintiffs' income had they been married at the time. Indeed, Illinois Federal concedes that the law would have required it to do so.[4] Thus, it is plain that Illinois Federal treated plaintiffs differently—that is, refused to aggregate their incomes—solely because of their marital status, which is precisely the sort of discrimination prohibited by section 1691(a)(1) on its face.

■ Despite the section's clarity of language, Illinois Federal seeks to avoid a finding of prohibited discrimination by arguing that it was not the Congressional purpose to require such an aggregation of the incomes of non-married applicants. It can be assumed, *arguendo,* that one, perhaps even the main, purpose of the act was to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider apart from their husbands as individually worthy of credit. But granting such an assumption does not negate the clear language of the Act itself that discrimination against *any* applicant, with respect to *any* aspect of a credit transaction, which is based on marital status is outlawed. When the plain meaning of a statute appears on its face, we need not concern ourselves with legislative history, *see Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61

---

**4.** 12 U.S.C. § 1735f–5 requires that "every person engaged in making mortgage loans secured by residential real property consider without prejudice the combined income of both husband and wife for the purpose of extending mortgage credit . . . to a married couple or either member thereof." *See also* Brief for Defendant Illinois Federal at 14.

L.Ed. 442 (1917), especially when evidence of the legislation's history as has been presented to us does not argue persuasively for a narrower meaning than that which is apparent from the statutory language.[5] *See Boston Sand & Gravel Co. v. United States,* 278 U.S. 41, 48, 49 S.Ct. 52, 73 L.Ed. 170 (1928). We believe that the meaning of the words chosen by Congress is readily apparent.

Illinois Federal expresses the fear that a holding such as we reach today will require it to aggregate the incomes of all persons who apply for credit as a group. Lest it be misinterpreted, we note that our holding is not itself that far-reaching. It does no more than require Illinois Federal to treat plaintiffs—a couple jointly applying for credit—the same as they would be treated if married. We have not been asked to decide what the effect of the Act would have been had plaintiffs not applied for credit jointly. Nor do we have before us a question of whether the Act's marital status provision in any way applies to a situation where more than two people jointly request credit. We hold only that, under the Act Illinois Federal should have treated plaintiffs—an unmarried couple applying for credit jointly—the same as it would have treated them had they been married at the time.

### C.

██ Illinois Federal also contends that, regardless of this court's decision on the issue of income aggregation, the judgment of the district court should be affirmed.

The premise of this contention is that, even had the incomes of plaintiffs' been combined, Illinois Federal would still not have extended the loan because of lack of sufficient job tenure or credit history. Due to the district court's basis for decision and the state of the record, we are not in position to pass on the validity of this separate issue.

The district court entered summary judgment for Illinois Federal on the ground that the failure to aggregate incomes was not a violation of the Act. Thus, having no need to do so, it never reached the question of whether plaintiffs were otherwise eligible for the loan. Whether Illinois Federal would have otherwise extended the loan is a question of fact that is material, given our disposition of the aggregation issue. Accordingly, if there is a genuine dispute over that issue, summary judgment is inappropriate. Fed.R.Civ.P. 56. On the record, there appears to be such a dispute. Although Illinois Federal contends that plaintiffs would remain ineligible regardless of aggregation, plaintiffs assert that they were told the loan would be forthcoming if they produced a marriage certificate. Because we remand the case to the district court, we deem it sufficient to note the appearance of a genuine issue of material fact on this state of the record. Following remand, further discovery and additional affidavits may either confirm or dispel this appearance.[6]

### III

██ Plaintiffs also appeal from the district court's entry of summary judgment in

---

**5.** For example, defendant Illinois Federal makes much of certain statements of Representative Leonora Sullivan, to whom it refers as a sponsor of the Act, in its attempt to define the Act's purpose and scope in narrow terms. *See* Brief for Defendant Illinois Federal at 10–11. While not purporting to engage in an extensive review of the relevant history, we do note in passing the following remarks of Representative Sullivan offered in connection with the 1976 Amendment to the Act which she called "[o]stensibly a 'women's' law":

> The Equal Credit Opportunity Act . . . *will undoubtedly help many women, and men too,* who are creditworthy and who happen to be single, divorced, separated or widowed,

in overcoming traditional and often irrational discriminations in the credit market . . . .

121 Cong.Rec. 27136 (1975).

**6.** For example, it may be determined how the marital status of applicants affects Illinois Federal's "judgmental evaluation" of their job tenure and credit history.

Because this issue of creditworthiness *vel non* as determined by allegedly nondiscriminatory factors has not been finally decided, we do not reach the question of whether Illinois Federal would be liable to plaintiffs under the Act if the proscribed discrimination were but one of several reasons for the denial of credit.

favor of the other defendants: Colonial Mortgage, Al Shoemaker, and B.W. Real Estate. The district court based its judgment on alternative grounds, holding first that these defendants had done nothing which could be construed as a discriminatory act, and second, that regardless of their actions they were not "creditors" as that term is used in the Act. We affirm on the first ground, thus we do not reach the second.

There is no indication that these three defendants participated in Illinois Federal's decision to discriminate or in any way benefited therefrom. At most, plaintiffs' allegations describe a course of conduct whereby these defendants acted as conduits, transferring information from plaintiffs to Illinois Federal and relaying decisions back. Inasmuch as we are unable to find on the record an instance where one of these three defendants participated in a decision to discriminate against plaintiffs on the basis of marital status, we affirm the order of the district court granting summary judgment in favor of defendants Colonial Mortgage, Al Shoemaker, and B.W. Real Estate.

## IV.

■ There remain two issues requiring our attention. Plaintiffs have appealed from the district court's order denying their motion for an interim award of attorney fees. We note simply that the Act provides:

> In the case of any successful action . . . the costs of the action, together with a reasonable attorney's fee as determined by the court, shall be added to any damages awarded by the court . . .

15 U.S.C. § 1691e(d). Because this case has not yet come to a conclusion, not even a preliminary one,[7] and is not yet a "successful action," we hold the district court did not abuse its discretion in denying plaintiffs an interim fee award.

■ Finally, plaintiffs contend that the district court abused its discretion in denying their motions to compel discovery and for sanctions for failure to comply with discovery requests. The motion for sanctions, made prior to any motion to compel discovery, was appropriately denied by the district court. The motion to compel discovery was regarded as moot by the district court after its decision to grant Illinois Federal's summary judgment motion. Because we reverse the summary judgment, we remand the question of the appropriate scope of discovery to the district court for consideration in light of our decision today.

In sum, the order of the district court granting summary judgment to defendant Illinois Federal is reversed, and the cause is remanded along with the discovery question. The order of the district court granting summary judgment to defendants Colonial Mortgage, Al Shoemaker, and B.W. Real Estate is affirmed, as are the orders denying discovery sanctions and interim attorney fees.

---

7. *Cf. Howard v. Phelps*, 443 F.Supp. 374 (E.D. La.1978), relied on by plaintiffs, where the court allowed an interim award of attorney fees under the Civil Rights Attorney Fees Awards Act, 42 U.S.C. § 1988, after preliminary injunctive relief had been obtained.