**CMF VIRGINIA LAND, L.P., Plaintiff,**

v.

**Edward L. BRINSON et al., Defendants.**

**Civ. A. No. 92–275.**

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 9, 1992.

William Ray Baldwin, III, Brian Keith Jackson, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, Va., for Resolution Trust Corp. as Conservator for Investors Federal Sav. Bank.

David Gordon Fiske, Thomas Wilfried Mitchell, Shaw, Pittman, Potts & Trowbridge, Washington, D.C., for CMF Virginia Land, L.P.

Jane Marum Roush, Hogan & Hartson, McLean, Va., for Edward L. Brinson, Douglas C. Mullins, Richard N. Rose and Kieran P. Quinn.

Richard John Martin, Winstead, Sechrest & Minick, Washington, D.C., for Kieran P. Quinn.

Richard John Martin, Linda B. Bridgman, Winstead, Sechrest & Minick, Washington, D.C., for Stanley I. Marks and Lynda M. Marks.

Linda B. Bridgman, Winstead, Sechrest & Minick, Washington, D.C., for Francis T. Quinn, Jr. and Julie D. Quinn.

Richard John Martin, Linda B. Bridgman, Winstead, Sechrest & Minick, Washington, D.C., for Arthur B. Benjamin and Karen V. Benjamin.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on two motions by CMF Virginia Land, L.P. ("CMF"): (1) to substitute itself as plaintiff in this action, pursuant to Fed.R.Civ.Proc. 25(c); and (2) for Summary Judgment, pursuant to Fed.R.Civ.Proc. 56(a).

### I. FACTUAL SUMMARY

This is a suit on a guaranty. CMF seeks judgment against Defendants Edward L. Brinson, Douglas C. Mullins, Richard N. Rose, Kieran P. Quinn, Stanley I. Marks, Lynda M. Marks, Francis T. Quinn, Jr., Julie D. Quinn, Arthur B. Benjamin and

Karen V. Benjamin ("Defendants") based on their alleged voluntary, knowing and unconditional guaranty of a $3.5 million loan (the "Guaranty"). CMF acquired the loan and the Guaranty from the Resolution Trust Corporation ("RTC"), which in turn had acquired the loan from the original plaintiff in this action, Investors Savings Bank, F.S.B. ("Investors").

On or about October 21, 1988, Investors loaned Calibre/Comvest Limited Partnership ("Calibre/Comvest") $3.5 million as financing for a proposed 500–unit apartment project in Fairfax County, Virginia. Calibre/Comvest, in turn, executed a $3.5 million note payable to Investors (the "Note"). Repayment of the Note was guaranteed by the Defendants pursuant to the Guaranty on October 21, 1988. On October 21, 1989, the guarantors consented to an extension of the maturity date of the Note to January 21, 1990. The Note matured on that date, but no payment was made. Pursuant to the terms of the Guaranty, the male defendants, as guarantors, are jointly and severally liable for repayment of all amounts loaned to Calibre/Comvest under the Note. The Guaranty provides in relevant part:

1. Guarantors joint [sic] and severally, guaranty

(a) the payment in full of the Note, together with all interest and other sums due thereon and all other sums owed by borrower pursuant to the Loan Documents including reasonable attorneys fees which may be incurred in enforcing the payment of said Note or the obligations of guarantors hereunder, and

(b) the performance by borrower of borrowers obligations and covenants under the Loan documents....

On October 31, 1990, Investors filed suit against the Defendants seeking payment under the Guaranty. Investors subsequently failed as a financial institution, and the RTC, as its receiver, acquired Investors' assets, including the loan to Calibre/Comvest. Pursuant to a written Assignment Agreement dated September 9, 1992 (the "Assignment Agreement"), the RTC sold the loan, including the Guaranty, to CMF. The Assignment Agreement provided, in part, that the RTC intended for CMF to be able to assert all of the special defenses available to the RTC, including (1) the *"D'Oench Duhme"* doctrine, (2) 12 U.S.C. §§ 1823(e) and 1821(d)(9), and (3) the Federal Holder in Due Course defense. (Assignment Agreement at § 21.11.)

## II. SUBSTITUTION OF PARTIES

CMF moves, pursuant to Fed.R.Civ.Proc. 25(c), to substitute itself as plaintiff in this action on the basis of the Assignment Agreement which grants CMF all of the RTC's rights, title and interest in this action. The Assignment Agreement and Rule 25(c) both dictate that substitution is permissible and appropriate in this case and, therefore, the motion will be granted.

## III. SUMMARY JUDGMENT

### A. *D'Oench Duhme and Its Statutory Progeny*

CMF contends that the so-called *"D'Oench Duhme"* doctrine and its statutory progeny, Section 13(e) of the Federal Deposit Insurance Act, 12 U.S.C. § 13(e), bar all of the affirmative defenses asserted by the defendants in this action, and entitles CMF to judgment as a matter of law.

The *D'Oench Duhme* doctrine arises from the Supreme Court's decision in *D'Oench Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), that a debtor is estopped from asserting any defense based on a side agreement that would tend to mislead a federal insurance agency about the terms of an asset it acquires. In *D'Oench Duhme*, the makers of a promissory note raised the defenses of failure of consideration and that the bank had orally agreed that it would never demand payment of the note. *Id.* at 456, 62 S.Ct. at 679. The Supreme Court held that the debtors were barred from raising those defenses in an action to enforce the terms of the note. *Id.* at 459–60, 62 S.Ct. at 680–81. The doctrine is based on a policy-oriented recognition that federal regulatory agencies are able to perform their supervisory and insurance functions effectively

only if they are able to rely on the books and records of failed financial institutions.

Congress supplemented the *D'Oench Duhme* doctrine by enacting 12 U.S.C. § 1823(e), which establishes a four-pronged test which must be satisfied before any alleged agreement may be used by a debtor to defend against a claim by the RTC or the FDIC.[1] Specifically, Section 1823(e) states that no agreement that tends to diminish or defeat the interest of the FDIC in any asset shall be valid unless such an agreement (1) is in writing, (2) was executed by the federally insured deposit institution contemporaneously with the acquisition of the asset, (3) was approved by the depository institution's board of directors, and (4) has continuously been a part of the depository institution's official records. Similar policy considerations underlie Section 1823(e) as do the *D'Oench Duhme* doctrine. *See Langley v. FDIC,* 484 U.S. 86, 91–92, 108 S.Ct. 396, 399, 98 L.Ed.2d 340 (1987).

■ Both *D'Oench Duhme* and Section 1823(e) have been extended to third parties who, like CMF in this case, purchase assets of a failed institution from the FDIC or RTC. Extension of the doctrine to third-party purchasers is intended to "promote purchase and assumption transactions by offering the purchaser protection from secret agreements that tend to affect adversely its rights in the instruments that it acquires" and therefore provides the receiver with a greater opportunity to protect the failed institution's assets. *Porras v. Petroplex Sav. Ass'n,* 903 F.2d 379, 381 (5th Cir.1990). *See also, e.g., FDIC v. Newhart,* 892 F.2d 47, 50 (8th Cir.1989). Therefore CMF may invoke both *D'Oench Duhme* and Section 1823(e) in its attempt to legally bar the defendants' affirmative defenses.

## B. *The Affirmative Defenses*

The defendants set forth three affirmative defenses which, they contend, shield them from liability on the Guaranty. Two of them are barred by *D'Oench Duhme* and Section 1823(e), and thus the Court eliminates them pursuant to the plaintiff's summary judgment motion. The third "affirmative defense," which alleges that the Guaranty was executed in violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA"), while not barred by *D'Oench Duhme* and Section 1823(e), is not properly asserted as an affirmative defense to liability, and should instead take the form of a compulsory counterclaim. The defendants' ECOA claim cannot, as a matter of law, render their debt void, but still allows them the opportunity at trial to prove the alleged violation and their entitlement to recoupment damages. Therefore, the Court will enter summary judgment on behalf of the plaintiff for the amount of the Guaranty,[2] and realign the "affirmative defense" as a compulsory counterclaim so that the defendants will, in effect, become plaintiffs in the remaining segment of the case as they attempt to establish an ECOA violation and an entitlement to damages which the Court may award as a setoff against the amount of the Guaranty.

1. The "Agreement to Loan Money" Defense

■ Paragraph 13 of the Amended Answer and Grounds of Defense of the Quinn, Marks and Benjamin Defendants ("Amended Answer") alleges:

> 13. Plaintiffs right to recovery is barred by its breach of an enforceable promise to lend the Calibre/Comvest Limited Partnership ("Partnership") funds necessary to pay off the debt which is the subject of this action.

1. This statute is specifically made applicable to the RTC in 12 U.S.C. § 1441a(b)(4).

2. The Court holds only that the plaintiff is entitled to recover for the amount of the Guaranty. By the terms of the Guaranty, the male defendants are jointly and severally liable for repayment of all amounts loaned to Calibre/Comvest under the Note. The Court leaves until entry of its final judgment order an exact determination of each female co-defendant's liability under the Guaranty since their liability is expressly limited by its terms. Of course, any or all of the defendants might have their liability offset by whatever amount the Court decides to award as damages if they successfully prove an ECOA violation at trial.

As a threshold matter, this alleged promise, which appears nowhere in the loan documents, fails to satisfy even the first prong of Section 1823(e) because it is not written. In fact, it fails to meet any of Section 1823(e)'s requirements: It was not executed by the bank contemporaneously with the acquisition of the Guaranty; it was not approved by the board of directors or its loan committee or reflected in the minutes of the board or committee; and it was not continuously an official record of the bank. It is nothing more than a garden variety "side agreement," the kind which *D'Oench Duhme* expressly disallows as a basis for avoiding liability. Courts specifically have held that "breach of contract" and/or "failure of consideration" defenses based on an alleged oral agreement to fund future loans are barred under Section 1823(e). *E.g., Federal Sav. & Loan Ins. Corp. v. Murray*, 853 F.2d 1251, 1255 (5th Cir.1988) ("alleged oral agreements to fund additional loans ... are simply secret side agreements that the Court invalidated almost fifty years ago in *D'Oench*").

### 2. The "Lack of Consideration" Defense

 The female Marks, Benjamin and Quinn defendants also raise a "lack of consideration" defense. (Am. Answer at para. 12.) These defendants claim that the Guaranty must fail for lack of consideration because they were required to sign the Guaranty without benefitting therefrom. Not only does this undercut the entire philosophy behind the guaranteeing of loans, but the law dictates that such a defense cannot be effectively asserted against the RTC or its assignee, CMF. *D'Oench Duhme*, 315 U.S. at 459–60, 62 S.Ct. at 680–81. *Taylor Trust v. Security Trust Fed. Sav. & Loan*, 844 F.2d 337, 342 (6th Cir.1988).

### 3. The "ECOA" Defense

The Defendants assert that as a condition of extending credit to Calibre/Com-vest, Investors required the guarantees of the female defendants, who are the spouses of the principals of the limited partners of Calibre/Comvest. This requirement, the defendants allege, violates the ECOA, voids the Guaranty and, consequently, shields them from liability.[3]

The ECOA provides in pertinent part that, "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of ... sex or marital status." 15 U.S.C. § 1691(a)(1). The Federal Reserve Board, pursuant to the ECOA, 15 U.S.C. § 1691b(a), has promulgated Regulation B, which provides:

[A] creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested.

12 C.F.R. § 202.7(d)(1) (1992). The defendants contend that the conditioning of the loan upon spousal guarantees violated these provisions, rendering the Guaranty void and relieving them of liability thereunder or, at least, entitling them to recoupment of damages.

 The fact that Investors required the spousal guarantees is undisputed. (*See* Loan Commitment of October 3, 1988.) More significantly, a former senior vice president for Investors, W.W. Cottrell, III, gave deposition testimony which reasonably could be construed as providing support for the defendants' contention that no analysis was performed, prior to the demand for spousal guarantees, to ascertain whether the male guarantors possessed sufficient separate assets from their spouses so as to qualify as creditworthy for the underlying loan from Investors. (*See* Cott-

---

**3.** The Guaranty states that the liability of each of the female defendants is limited to:

the value of the jointly held assets shown on the financial statements of their respective spouses each dated as of February, 1988 and delivered to Lender in connection with the Loan. (Guaranty at para. 13.)

While CMF contends that such a limited guarantee is permissible under the ECOA and Regulation B, *see* 12 C.F.R. § 202.7(d), the Court believes that genuine issues of material fact remain concerning whether or not an ECOA violation occurred. Thus, this issue will be tabled until trial.

rell Depo.) The record not only indicates that the female defendants were not "joint applicants" under the ECOA, but also suggests that a trier of fact could reasonably find that the male defendants qualified "under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. § 202.-7(d)(1). It seems clear, then, that the defendants have raised genuine, triable issues regarding a possible ECOA violation. Regardless of the defendants' ability to prove such a violation, however, it is not an affirmative defense which can render the entire debt invalid.

In *Diamond v. United Bank & Trust,* 776 F.Supp. 542 (N.D.Okla.1991), a borrower and his wife claimed that their lender had violated the ECOA by requiring the wife's signature on a note which the FDIC thereafter attempted to recover. The court granted judgment for the FDIC. It noted first that 12 U.S.C. § 1823(e) applied, and that only a defense that would render the note void could be maintained against the FDIC. The court then concluded, "[T]here is no authority, in statutory language or case law, for the proposition that a violation of the ECOA renders an instrument void." 776 F.Supp. at 544. This conclusion is buttressed by the ECOA's express statutory scheme. The ECOA, by its own terms, sets forth the contemplated remedy under the statute—a federal civil action for actual damages, punitive damages not to exceed $10,000, attorneys' fees or injunctive relief. Nowhere does it afford relief by way of an affirmative defense. A counterclaim certainly can be premised upon a violation of the ECOA, but such a violation cannot be alleged to avoid basic liability on the underlying debt. This accords with the holding of a recent opinion from the Eastern District of New York:

> The ECOA on its face provides only for a civil action in federal court for actual damages as a remedy.... It thus appears that the defendants may be entitled to employ the ECOA only to assert a counterclaim, not a defense.

*United States v. Joseph Hirsch Sportswear Co., Inc.,* 1989 WL 20604 (E.D.N.Y. 1989), *aff'd without op.,* 923 F.2d 842 (2d Cir.1990).

The defendants argue that the ECOA's grant of broad remedial power to district judges authorizes this Court to render the Guaranty void should they prove an ECOA violation. Section 1691e(c) provides:

> Upon application by an aggrieved applicant, the appropriate United States district court or any other court of competent jurisdiction may grant such equitable and declaratory relief as is necessary to enforce the requirements imposed under this title [15 USCS §§ 1691 et seq.].

The Court disagrees that this language, or any other which is either expressly or implicitly present in the ECOA, grants it the sweeping power to invalidate the underlying Guaranty in this case. Invalidation of the debt itself is a remedy too drastic for the Court to implement simply by reading between the lines of the ECOA. In lieu of express legislative guidance authorizing such relief, the Court holds that whatever remedial powers it is accorded under the ECOA are most responsibly exercised by:

(a) Granting summary judgment to the plaintiffs for the amount of the Guaranty since the defendants' other affirmative defenses are precluded by *D'Oench Duhme* and Section 1823(e), and their ECOA claim is not an effective defense to liability;

(b) Realigning the affirmative defense as a compulsory counterclaim, thus giving the defendants an opportunity at trial to prove an ECOA violation and their entitlement to whatever damages are due them because of such violation; and

(c) Offsetting the amount of the Guaranty—which was awarded to the plaintiff on summary judgment—by any damages proven by the defendants on their ECOA claim, and thus arriving at the total amount that the defendants owe to the plaintiff.

The Court certainly can envision cases where this scheme has the practical effect of rendering the underlying instrument void. Parties who successfully demonstrate egregious ECOA violations may well

be entitled to damages which equal the amount of the instrument for which they would otherwise be liable. In those cases, the amount of the underlying debt and the ECOA damages will cancel each other out, and the defendant will wind up owing nothing to the lender who violated the ECOA. While this would have the same result as cancelling the debt from the outset, the Court's approach is far more consistent with the statutory framework of the ECOA and will extricate district courts from their current interpretive quagmire, in which they are asked to infer the existence of a rather extraordinary remedy nowhere present in the language of a statute which already sets forth the specific remedies it contemplates for addressing violations thereof.

"The purpose of the ECOA is to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit." *Anderson v. United Finance Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982). *See also Markham v. Colonial Mortgage Serv. Co.*, 605 F.2d 566, 569 (D.C.Cir.1979). Regulation 202.7(d)(1), which was allegedly violated by Investors in this case, was promulgated by the Federal Reserve Board to effectuate this purpose. *See Anderson*, 666 F.2d at 1277. It is well-documented that, prior to the ECOA, it was customary for lenders to require the guarantee signatures of husbands whose wives sought credit, even when a credit check would have revealed that the wife was creditworthy on her own. The ECOA was implemented to prevent this discriminatory practice of forcing women to have their spouses guarantee any loan they wished to receive. In this case, however, as in many recent cases brought under the ECOA, male borrowers attempt to invoke the ECOA when a lender requires their wives' signatures as co-guarantors on a loan instrument.[4] While the Court agrees that the plain language of the

ECOA forbids discrimination "against any applicant, with respect to any aspect of a credit transaction, which is based on marital status," *Markham*, 605 F.2d at 569, the Court is especially averse to rendering void a Guaranty whose execution violated the ECOA in a manner not expressly targeted by the statute. The Court believes its approach is appropriate in all cases where the ECOA is improperly interposed as an affirmative defense, but simply notes that the Defendants' argument that the debt instrument should be entirely nullified is especially untenable where, as here, the type of ECOA violation alleged was not even contemplated by the statute when it was enacted.

The Court is mindful that one district court, because its Court of Appeals had not yet passed judgment on this issue and because of the "broad remedial powers" provided for in the ECOA, recently declined to grant summary judgment to the plaintiff in a factually similar case. *American Security Bank, N.A. v. York*, 1992 WL 237375 (D.D.C. September 1, 1992). In *American Security*, the court was faced with the plaintiff bank's motion for summary judgment based on non-payment of a $13.5 million note obligation. The makers of the note asserted a defense to liability based on an alleged violation of the ECOA, contending that the bank had imposed a requirement of spousal guarantees before undertaking any study of the male borrowers' creditworthiness. *Id.* at p. 2. As in the instant case, the defendants in *American Security*, asserted the ECOA violation as: (1) a full defense to any recovery by the bank; and (2) as a recoupment based on damages suffered by the defendants. *Id.*

In denying summary judgment, the *American Security* court noted that, at a minimum, assertion of an ECOA defense has been found to support an award of damages in the nature of recoupment if a violation of the statute is established and, thus, that the defendants should be allowed

---

4. The Court's decision allows both the male and female defendants to come forward at trial and attempt to demonstrate their entitlement to damages because of the alleged ECOA violation. The Court leaves until trial the issue of whether the male defendants have standing to assert a violation of the ECOA when their lender allegedly breached the ECOA by requiring their *wives'* signature on the Guaranty.

at trial to try to establish a violation of the ECOA and put on proof of damages relating to such a violation. This Court's decision is essentially consistent with *American Security*. Like the *American Security* court, this Court does not wish to deny the defendants the opportunity to "put on proof of damages by way of recoupment in the event it is proved that [the plaintiff] violated [the ECOA]." *Id.* The counterclaim which has survived the plaintiff's motion for summary judgment affords the defendants the opportunity to do just that. This Court simply places this opportunity within a sensible framework that is structurally consistent with the language and purpose of the ECOA.