**RTC COMMERCIAL LOAN TRUST 1995–NP1A, a Delaware business trust, Plaintiff,**

v.

**WINTHROP MANAGEMENT, a Massachusetts general partnership, Defendant.**

No. 3:96CV117.

United States District Court, E.D. Virginia, Richmond Division.

April 15, 1996.

James S. Crockett, Jr., Mays & Valentine, Richmond, VA, for plaintiff.

Stanley Knight Joynes, III and William Anthony Broscious, LeClair, Ryan, Joynes, Epps & Framme, Richmond, VA, for defendant.

### MEMORANDUM OPINION

RICHARD L. WILLIAMS, Senior District Judge.

This matter is before the Court on the defendant's motion to dismiss and motion to vacate the Court's order of March 20, 1996. Also before the Court are the plaintiff's motion for leave to file an amended complaint and motion to shorten time for defendant to respond to plaintiff's motion. This case presents the question of whether the Resolution Trust Corporation ("RTC"), when assigning its rights to delinquent notes, can assign its right to sue in federal court under the Financial Institutions Reform, Recovery and Enforcement Act ("FIRREA") (codified in scattered sections of Title 12, United States Code) and associated legislation, specifically 12 U.S.C. § 1821(d)(17)(A). The Court holds that the right to sue in federal court is not assignable. For the reasons stated below, the defendant's motion is granted for lack of jurisdiction and the case and remaining motions are therefore dismissed.

## Facts and procedural background.

This case grows out of the savings and loan debacle and the resulting federal bailout that created RTC, a federal entity. As is typical of this preliminary stage of a case, and even more typical of savings and loan cases, most facts are still in dispute or unknown. The following facts are merely the rough outline necessary for the Court's decision.

The RTC itself has now ceased operations, but before doing so it assigned its assets to private investors such as those controlling the plaintiff, RTC Commercial Loan Trust 1995–NP1A ("Loan Trust"). In essence, the agreement between RTC and Loan Trust assigned "all of [RTC's] right, title and interest in and to the Assets," those Assets being delinquent commercial loans. The Loan Trust received the right to first, be fully compensated for costs of collection, and second, to retain one-half of all remaining proceeds from its private efforts to collect on the obligations. Although Loan Trust must remit the other half of the collection proceeds to the United States, the parties agree that the United States is not a part of the plaintiff organization and is not a party in interest to this case.

The note that creates the instant dispute was originally made between Investor Savings Bank, F.S.B. of Richmond, Virginia and Winthrop Southeast Limited Partnership. That partnership and Winthrop Management are two of a consortium of related investment and management entities sharing, among other attributes, the same address and the names "Winthrop" or "Southeast." The note was secured by an income stream generated by rental properties managed by the defendant, but only by that portion of the income which passed through the defendant's hands; most significantly, that note was nonrecourse. The result, alleges the defendant, is that when Winthrop Management ceases to manage the rental properties, the security evaporates.

This last event has now occurred. After Investor Savings Bank became insolvent, RTC assumed its rights and began a long effort to collect on the note. Those efforts were unsuccessful and RTC assigned the note to the plaintiff. The plaintiff filed this suit, alleging diversity jurisdiction, and then served the defendant via the Secretary of the Commonwealth on February 16, 1996. In what may charitably be described as a coincidence, Winthrop Management was then terminated. Southeastern Income Properties Limited Partnership, by its general partner Winthrop Southeast Limited Partnership, sent a notice of termination to Winthrop Management and replaced the defendant with Insignia Management, a company whose affiliations to the Winthrop group are still in dispute. The notice of termination is dated March 15, a Friday, and took effect March 18. Defendant's answer was filed that Monday as well.

■ Informed late of this development, Loan Trust moved to protect its collateral. Loan Trust appeared before the Court for a temporary restraining order on March 20 and the Court entered an order appointing an emergency receiver. The parties returned on March 21 on the defendant's motion to dismiss for lack of jurisdiction. Winthrop Management alleged that the parties were non-diverse. The Court stayed its order and directed the plaintiff to respond. A flurry of motions and affidavits followed and the parties now stipulate that diversity jurisdiction is improper, since both the plaintiff and Southeastern Income Properties Limited Partnership [1] are Delaware entities. The plaintiff now asserts federal question jurisdiction and has moved to amend by adding new defendants and a claim under one of RTC's governing statutes, 12 U.S.C. § 1821(d)(17)(A). The jurisdictional issue is now squarely before the Court.

Finally, the document which assigned RTC's rights has itself become an issue. The plaintiff claims that the assignment provisions, coupled with a section entitled "Res-

---

1. A partnership takes on the citizenship, for diversity purposes, of its general and limited partners. Southeastern Income Properties Limited Partnership is a general partner of Winthrop Management and a citizen of Delaware. Therefore Winthrop Management is a citizen of Delaware and the parties are non-diverse.

ervation of Rights," assigned all of RTC's rights to Loan Trust. The plaintiff claims that included in those rights is the right to sue under 12 U.S.C. § 1821(d)(17)(A) and the right to sue in federal court. The plaintiff has tendered the affidavit of David B. Iannorone, counsel to the Federal Deposit Insurance Corporation ("FDIC"), purporting to interpret the assignment clauses in this fashion. Loan Trust argues that the reservation of rights section reserves to RTC only the right to sue bank officers for fraud on the FDIC; all contractual rights under the notes, it claims, were validly transferred. The defendant claims that the assignment contract is clear enough to permit no parol evidence, and that either no rights or no federal-claim rights were assigned.

### Analysis.

**1. Defendant's motion to dismiss for lack of jurisdiction.**

■ For purposes of the motion to dismiss, the Court assumes from the clear language of the statute[2], without deciding the point, that the RTC did attempt to assign its rights to sue in federal court under 12 U.S.C. § 1821(d)(17)(A). Is such an assignment possible?

Actions commenced by the RTC itself confer automatic jurisdiction by means of 12 U.S.C. § 1441a(*l*):

> *Power to remove; jurisdiction.* (1) In general. Notwithstanding any other provision of law, any civil action, suit, or proceeding to which [RTC] is a party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction over such action, suit or proceeding.

Since § 1821(d)(17)(A) provides no specific jurisdictional language, the general statement of § 1441a(*l*) controls.

The plaintiff has cited no section of FIRREA which explicitly permits assignment of automatic federal jurisdiction. Instead the plaintiff at oral argument cited a variety of

cases on a similar question, the ability of the RTC and FDIC to assign its right to avoid defenses under the *D'Oench, Duhme* rule. It is to that rule that the Court first turns.

The rule takes its name from *D'Oench, Duhme & Co., Inc. v. F.D.I.C.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). That case, grounded in federal common law, held that a debtor is estopped from asserting any defense based on a side agreement that would tend to mislead a federal insurance agency about the terms of the insured note. *Id.*, *cited in CMF Virginia Land, L.P. v. Brinson*, 806 F.Supp. 90, 92 (E.D.Va.1992). Congress supplemented the doctrine by enacting 12 U.S.C. § 1823(3), which established a four-prong test for invalidating debtors' secret-agreement defenses. Both *D'Oench, Duhme* as common law and § 1823(e) have been extended to third parties who, like Loan Trust in the present case, purchase delinquent notes from RTC. *CMF Virginia Land*, 806 F.Supp. at 93. The question thus becomes clear: should *D'Oench, Duhme* be extended not only to the secret agreement context, but also to allow assignment of the right to sue in federal court under § 1821(d)(17)(A)?

At least two courts have tread this ground before. One, an unreported disposition in a somewhat analogous case, found no federal question jurisdiction. *Vanderbilt Mortgage & Finance Co. v. Acceptance Insurance Company*, 1996 WL 87224 (E.D.La.1996). *Vanderbilt Mortgage* involved an RTC assignment of "all its right, title and interest" to a trust of mobile home loans. The plaintiff claimed that the assignment allowed the plaintiff, a private party, to remove to federal court under 12 U.S.C. § 1441a(1), RTC's general removal provision for FIRREA. Although the court found that the plaintiff had a colorable claim for removal to federal court, and thus attorney's fees against it were inappropriate, the court found that RTC's § 1441a(1)(1) removal rights had not been assigned. The plaintiff's claims were remanded as state causes. In contrast to *Van-*

---

2. Therefore the Court need not examine the Iannorone affidavit. However, the court notes that the affidavit was tendered to the Court at oral argument in draft form, unsigned. The Court has since received the final signed version of the

affidavit; in the final form, Iannorone redacted the language that claimed assignment of the right to sue under FIRREA and in federal court. The affidavit now takes no position on the point.

*derbilt Mortgage* stands *National Enterprises, Inc. v. Smith,* 892 F.Supp. 948 (E.D.Mich. 1995). *National Enterprises* involved an RTC assignment of a yacht lease to a private plaintiff. Again, the assignment transferred "all of [RTC's] interest . . . including all right to collect payments due . . ." The court examined the policy behind *D'Oench, Duhme,* including its codification in § 1823(e), and extended the doctrine explicitly:

> [a]s I examine the policy involved in the creation of the RTC and the *D'Oench, Duhme* doctrine, it is clear that this is a case that arises under the laws of the United States and that the RTC can and did assign the right to initiate suit on this Lease in a federal forum. This court has subject matter jurisdiction . . .

*Id.* at 951. It appears that the issue is one of first impression in the Eastern District of Virginia.

Several other districts appear to hold that *D'Oench, Duhme* is a *carte blanche* to allow assignment of the RTC's FIRREA rights. *E.g., Mountain States Financial Resources Corp. v. Agrawal,* 777 F.Supp. 1550 (W.D.Okla.1991) (applying *D'Oench, Duhme* to allow assignment of the RTC's 6–year extended statute of limitations under 12 U.S.C. § 1821(d)(14))[3]. Such courts, as in *National Enterprises,* emphasize a policy justification of *D'Oench, Duhme:* the full value of assets in the hands of FDIC should be preserved in order to permit their sale. The Fifth Circuit also found the *D'Oench, Duhme* argument persuasive, although that court's decision to allow limitations-period assignment was more heavily based on assignment common law. *F.D.I.C. v. Bledsoe,* 989 F.2d 805 (1993). But the Eastern District of Virginia rejected this expansive trend, at least with respect to the statute of limitations, in *WAMCO, III, Ltd. v. First Piedmont Mortgage Corp.,* 856 F.Supp. 1076 (1994). *WAMCO* held that despite the policy considerations of *D'Oench, Duhme,* the clear language of FIRREA means that the limitations period is personal to RTC in its capacity as receiver and therefore cannot be

assigned. *Id.* at 1086–88. In other words, while RTC may assign its rights, it may not assign its status as a federal entity—it may not deputize a private party with the full powers of RTC. The status-versus-rights distinction is the crux of the issue in the present case.

■ The policy favoring sale of assets by FDIC, by preserving asset value in the hands of private assignees, is an important policy behind *D'Oench, Duhme.* But it is not the only policy. At least as important is a common law theory involving reliance, estoppel and unclean hands. To introduce this second prong, it is important to reemphasize that *D'Oench, Duhme* was born in the secret agreement context. The FDIC in the original *D'Oench, Duhme* had insured banks on the basis of banks' assets, which were written notes, and relied on the notes themselves to clearly state the banks' full rights and obligations. *See* 315 U.S. at 458–60, 62 S.Ct. at 679–81. Before the Supreme Court, FDIC objected to the attempt of debtors, after accepting the benefits of federal insurance, to change the bargain once notes were called due. When the lender's stability had been favorably insured in ignorance of secret side agreements, claimed FDIC, asserting secret deals was an abuse of reliance and inequitable. The Supreme Court agreed. *Id.* at 459, 62 S.Ct. at 680. Debtors are thus estopped from asserting such defenses against any party with the *status* of an misled insurer, whether the FDIC itself or its assigns.

The RTC context is quite different from the context of side bets and secret deals. The savings and loan collapse was more the result of lenders' poor risk-management decisions than of fraud; regardless, the plaintiff concedes with respect to the Loan Trust's notes that RTC has reserved all rights to pursue bank officers for fraud. This case concerns not secret deals but an openly speculative, nonrecourse commercial note with tenuous security. When RTC assumed the note it took only the status of the lender who, though unwise, knew the full details of its

---

**3.** It is perhaps significant that, although this case adopted FIRREA's statute of limitations by theorizing a sweeping scope of RTC assignment power, it based jurisdiction not on federal question

under FIRREA but on diversity of parties. *Mountain States,* 777 F.Supp. at 1551. A similar unreported case did precisely the same. *Fall v. Keasler,* 1991 WL 340182 at *2 (N.D.Cal.1991).

deal—it did not take the status of a misled lender and it cannot assert that FDIC was misled. While RTC may dislike the terms of the note, it knew those terms from the beginning; likewise, Loan Trust bargained for what it knew to be a portfolio of unwise loans. Loan Trust therefore stands in the shoes of the original lender. Only in the secret agreement context would it stand completely in RTC's more comfortable shoes.

■ While it is a fundamental maxim of common law that the assignee stands in the shoes of the assignor, certain rights are purely personal and cannot be assigned. *WAMCO*, 856 F.Supp. at 1086. An unexecuted fraud claim is an example of a benefit which is personal and for the benefit of the assignor alone. *Id.* Another such benefit is the right to sue in federal court, unless a federal statute provides otherwise. As the obvious example, a Maryland plaintiff may under some conditions sue a Virginia defendant in a federal court—the federal diversity jurisdiction statute, 28 U.S.C. § 1332, so provides. However, if the Maryland plaintiff assigns her claim to a Virginia citizen, diversity evaporates. Likewise, although it is clear that Congress could explicitly permit RTC to assign federal jurisdiction, nothing in the statute or the common law of *D'Oench, Duhme* indicates that RTC may assign federal court jurisdiction here. On the facts of this case, RTC may assign neither its federal court jurisdictional section, § 1441a(1), nor its status as a federal party. The RTC has assigned no right to federal jurisdiction.

■ The Court commends counsel to both parties for their candid discussion of the case. The plaintiff admits its eagerness to remain in a federal court, where it might pursue all of the potential defendants in this case, and perhaps, later, all of Loan Trust's other notes, in a single forum. The Court recognizes that, given the poor collectability of the average delinquent RTC note, the added expense of multiple state actions may do real violence to Loan Trust's bottom line. But such sound strategic reasons do nothing to confer jurisdiction where the jurisdictional statutes are silent. Loan Trust argues that RTC assigned at least the right to pursue all state-law claims. The time has come to pursue those claims in state courts.

## 2. Plaintiff's motions to amend and to reduce time.

■ The defendant has filed its response to the motion to amend and thus plaintiff's motion to reduce time is moot. As to the motion to amend, Fed.R.Civ.P. 15(a) provides that leave to amend "shall be freely given when justice so requires." However, amendment need not be permitted where it would be futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). As discussed above, the original complaint fails on diversity jurisdiction, and therefore the amended complaint, which only adds defendants, would leave the parties nondiverse. Also as discussed above, the United States is not a real party in interest and RTC's right to sue in federal court was not assigned. Were the motion to amend to be granted, the Court would remain without jurisdiction and the amendment would be futile. Therefore the motion to amend must also be dismissed.

### Conclusion.

■ The Court holds that where RTC assigns claims unrelated to secret agreements, the rule of *D'Oench, Duhme* does not sanction the assignment of RTC's right to sue in federal court. The Court declines to follow *National Enterprises, Inc. v. Smith* and instead reaffirms and extends the rationale of *WAMCO, III, Ltd. v. First Piedmont Mortgage Corp.* Because the plaintiff concedes a lack of diversity jurisdiction, and because the proposed amended complaint's 12 U.S.C. § 1821(d)(17)(A) claim would not confer federal question jurisdiction, the Court lacks jurisdiction to hear the case. The motion to amend is denied as futile and the motion to reduce time is denied as moot. As this case was first filed in federal court, remand is inappropriate. Therefore the Court's order of March 20, 1996 is vacated and the complaint is dismissed for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).