NATIONAL ENTERPRISES,
INC., Plaintiff,

v.

Paul W. SMITH, Defendant.

No. 94–72839.

United States District Court,
E.D. Michigan,
Southern Division.

July 19, 1995.

Morgan J.C. Scudi, Huth, Lynett & Scudi, San Diego, CA and Michael J. Lynett, Huth, Lynett & Scudi, Detroit, MI, for plaintiff.

Stephen J. Safranek, Detroit, MI, for defendant.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

FEIKENS, District Judge.

### I. *Background*

This opinion addresses this court's subject matter jurisdiction in a case in which a former Michigan resident, a United States Citizen, residing on the Island of Saint Martin, a French protectorate in the Caribbean, is being sued by a California corporation, for nonpayment of a lease that was assigned to it by the Resolution Trust Corporation (RTC).

On June 29, 1987 defendant, Paul W. Smith, while a resident of Michigan, entered into an Open End Vessel Lease (Lease) with First Federal Savings & Loan Association of Toledo, Ohio (First Federal). The Lease gave defendant possession of a Viking forty-four foot Motor Yacht which First Federal purchased for him from a Detroit, Michigan yacht dealer. According to the Lease, defendant was to make monthly payments of Three Thousand Seventy–Four Dollars and Thirty–One Cents (3,074.31) for a period of one hundred-eighty (180) months to First Federal.

In late 1992, defendant moved into a house he built on St. Martin Island. He continued to make payments on the Lease until November 29, 1993; he has made no payments since that date.

On a later unspecified date First Federal, and its assets, including the Lease, was taken over by the Resolution Trust Corporation (RTC).[1] On June 2, 1994, using a quitclaim assignment RTC sold and assigned the Lease to plaintiff. That assignment gave plaintiff all the RTC's rights under the Lease, including the right to collect payments due under the Lease.

In July, 1994 plaintiff filed this suit alleging that defendant defaulted on payments due under the Lease; it seeks judgment in the amount of Four Hundred Sixty–Nine Thousand Four Hundred Seventy–Four and 61/100 Dollars ($469,474.61)[2]. Defendant's response is that this court lacks subject matter jurisdiction, and that he was improperly served.

### II. *Subject Matter Jurisdiction*

Article III, Section 1 of the United States Constitution states that the power to grant jurisdiction to the lower federal courts rests in Congress. *In Re Allied–Signal, Inc.*, 915 F.2d 190, 191 (6th Cir.1990). It is well-established that federal courts are courts of limited jurisdiction. *Robinson v. Michigan Consol. Gas Co. Inc.*, 918 F.2d 579, 582 (6th Cir.1990).

Plaintiff argues that this court has subject matter jurisdiction on the basis of the following statutes: (1) 28 United States Code (U.S.C.) § 1332(a)(1), the statute which grants jurisdiction when there is diversity of citizenship; (2) 28 U.S.C. 1333, which grants jurisdiction for suits in admiralty; and (3) 28 U.S.C. § 1331, which grants jurisdiction in federal question disputes.

The diversity statute provides that subject matter jurisdiction exists if the action is between citizens of different states of the United States. 13 CHARLES WRIGHT & ARTHUR MILLER, *Federal Practice & Procedure*

---

1. The exact date on which this event occurred was not provided by the parties. First Federal became insolvent and was one of the many savings and loan associations in the United States taken over by the Resolution Trust Corporation.

2. This number is the sum of the remaining payments, plus a balloon payment at the end of the lease, late charges and interest.

§ 3611 (1973). For a person to fit within this definition that person must be a citizen of the United States **and domiciled** within a state. *Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 828, 109 S.Ct. 2218, 2220–21, 104 L.Ed.2d 893 (1989) (emphasis added). Such is not the case here because Smith, although a United States citizen, is not domiciled in any state. He is "stateless" for purposes of § 1332(a)(1). *Id.* at 828, 109 S.Ct. at 2220–21.[3]

█ Similarly, 28 U.S.C. § 1333 does not provide subject matter jurisdiction in this case. Plaintiff argues that this Lease is a charter and that admiralty law applies. When determining whether a lease is a charter within admiralty jurisdiction principles a court looks to the terms of the contract. *Cary Marine, Inc. v. Motorvessel Papillon,* 872 F.2d 751, 755 (6th Cir.1989). The parties clearly state in Section 25 of the Lease, that it is governed by the laws of the State of Ohio. This provision conclusively indicates that the parties did not consider the Lease a charter at the time of contracting.

The plaintiff, however, can show that this court has subject matter jurisdiction because the assignment of the Lease from RTC to plaintiff creates a federal question under 28 U.S.C. § 1331. To develop this holding, we examine policy and law creating the RTC, the assignor of the Lease.

### III. Policy Reasons Behind Establishment of RTC

Congress enacted the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) to restore public confidence in the savings and loan industry. H.Rep. No. 101–54(I), 101st Cong., 1st Sess. 2 at 102 (1989). First Federal, as an insolvent savings and loan bank, was taken over by the RTC in accordance with this policy and statute. FIRREA serves the interests of the American taxpayer who demand "an expedited resolution to the monumental problems involved with the unprecedented costs of dealing with hundreds of insolvent thrifts and the orderly disposition of the assets of these failed institutions." *Id.* at 104. As part of FIRREA, Congress mandated that RTC should sell assets acquired from failed savings and loan banks at the best obtainable prices. *Id.* at 104. The public's interest is served when such assets are disposed of by the RTC free of any defenses which could materially lower such assets' value at the time of sale.

### IV. Importance of D'Oench, Duhme

█ The Supreme Court reasserted the importance of public confidence in the stability of the banking industry in the case: *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp,* 315 U.S. 447, 461, 62 S.Ct. 676, 681, 86 L.Ed. 956 (1942). *D'Oench Duhme,* decided after the banking disasters of the depression, freed the FDIC, and the public funds it administers, from misrepresentations and other defenses in the assets it took over which were not reflected in the failed banks records. *Id.*[4] Courts have extended this protection to assignees of the FDIC. *Bell & Murphy v. Interfirst Bank Gateway,* 894 F.2d 750, 754–755 (5th Cir. 1990). Thus, defenses barred by *D'Oench, Duhme* are also barred as to parties who purchase assets of a failed institution from the FDIC. *Porras v. Petroplex Sav. Ass'n,* 903 F.2d 379, 381 (5th Cir.1990). Similarly, courts citing *D'Oench, Duhme* have extended substantive statutory rights given to the FDIC to assignees of the FDIC. *Federal Savings and Loan Insurance Corp. v. Griffin,* 935 F.2d 691, 696 (5th Cir.1991) ("Policy reasons for insuring federal jurisdiction over cases involving the actions of failed thrifts continue when the FDIC is voluntarily dismissed and the owner of the failed thrift's assets remains"); *Mountain States Financial Resources v. Agrawal,* 777 F.Supp. 1550, 1552 (W.D.Okl.1991) ("[S]trong public policy

---

**3.** Plaintiff still contends that it can show that defendant actually is a resident of Michigan. If that is the case, diversity exists and this court has jurisdiction. I cannot, however, reach this conclusion because of the paucity of evidence submitted by the parties.

**4.** *D'Oench, Duhme* refers to the Federal Savings and Loan Insurance Corporation (FSLIC). FSLIC was abolished under FIRREA and all of its functions and activities, including rights under *D'Oench, Duhme,* see 12 U.S.C. 1823(e), were transferred to the FDIC, RTC, The Office of Thrift Supervision or the Federal Housing Finance Board.

[requires] that the FDIC's assignees acquire the six-year limitations period provided by § 1821(d)(14)(A).").

■ This precedent is significant since it exhibits judicial willingness to advance acceptance of Congress's stated policy of promoting stability and confidence in the Nation's banking system by applying the policies behind *D'Oench, Duhme* and its progeny to assignees of the FDIC. *Federal Deposit Insurance Corp. v. Wood,* 758 F.2d 156 (6th Cir.1985).[5] Although this case involves defenses different than those advanced in a *D'Oench, Duhme* case, the same principles are involved here. It is therefore clear that the proper conclusion is that Congress intended that the RTC would be able to sell its assets and confer rights in so doing. Thus, I find that when the RTC sells its assets it assigns the rights it holds to protect the value of those assets. Without an assignment of the rights possessed by the RTC, the value of such assets would be significantly diminished.

### V. *RTC Assignment*

■ It is thus necessary to analyze the assignment of those rights by RTC to plaintiff. "A legal assignment is a transfer or setting over of property ... and unless in some way qualified, it is properly the transfer of one's whole interest...." 6 Am.Jur.2d § 1 at 185 (1963); *United States v. General Motors Corp.,* 929 F.2d 249, 252 (6th Cir. 1991) (Citing Michigan law); *Federal Deposit Insurance Corp. v. Berry,* 659 F.Supp. 1475 (E.D.Tenn.1987); *Mountain States,* 777 F.Supp. at 1552. (An assignee acquires all of the assignor's rights and liabilities in the assignment).

The assignment in this case states, in relevant part, that it assigns from Assignor (RTC) to Assignee (plaintiff):

> all of Assignor's interest, to or under said Lease(s), if any, *including all right to collect payments due under the Lease(s),* if any, and to perform or require performance thereunder by virtue of the Leases(s). Neither party disputes that if the FDIC or RTC had instigated this litigation this court would have jurisdiction.

Thus, I conclude that the RTC transferred all the rights it possessed, as to the Lease, to plaintiff.

Was one of these rights the right to collect payments due under the Lease in federal court?

The answer is yes. It is undisputed that if the RTC were a party, this court would have subject matter jurisdiction pursuant to 12 U.S.C. 1441a(*l*)(1). If the RTC so desired it could have filed a suit in federal court against defendant. As I examine the policy involved in the creation of the RTC and the *D'Oench, Duhme* doctrine, it is clear that this is a case that arises under the laws of the United States and that the RTC can and did assign the right to initiate a suit on this Lease in a federal forum. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

For the reasons stated herein, defendant's motion to dismiss is DENIED. Plaintiff's counsel is directed to prepare an order as to personal service on the defendant, pursuant to either Federal Rule of Civil Procedure 4(f) or the Michigan Long–Arm Statute, Michigan Compiled Laws 600.704.

IT IS SO ORDERED.

---

**5.** Cited for principle that it is congressional policy to promote stability in banking system.