*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

LEROY WILLIAMS,

      Defendant-Appellee.

UNPUBLISHED
May 28, 2020

No. 347358
Wayne Circuit Court
LC No. 18-006845-02-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

DAVID ARNOLD CLIFFORD,

      Defendant-Appellee.

No. 349359
Wayne Circuit Court
LC No. 18-006845-01-FC

---

Before: JANSEN, P.J., and METER and CAMERON, JJ.

JANSEN, P.J. (*concurring in part and dissenting in part*).

In Docket No. 347358, I concur with the majority, that there was insufficient evidence to bindover defendant Leroy Williams on charges of first-degree premeditated murder, MCL 750.316(1)(a), and conspiracy to commit first-degree murder, MCL 750.157a. I also agree with the majority that the circuit court did not abuse its discretion by denying the prosecution's motion to amend the felony information to reinstate the felony-firearm charge against Williams. I agree to affirm.

However, in Docket No. 349359, I disagree with the majority's conclusion that there was sufficient evidence to establish probable cause to bind over defendant, David Arnold Clifford, on the charges of first-degree murder and conspiracy to commit first-degree murder. I also disagree with the majority that the circuit court abused its discretion when it denied the prosecution's

-1-

motion to amend the felony information to reinstate the charge of identity theft, MCL 445.65, against Clifford. Because in Docket No. 349359 I would affirm, I respectfully dissent.

## I. BINDOVER OF CLIFFORD

The prosecution first argues, and the majority agrees, that there was sufficient evidence to establish probable cause to bind over Clifford on first-degree premeditated murder and conspiracy to commit first-degree murder charges.

> In order to bind a defendant over for trial in the circuit court, the district court must find probable cause that this defendant committed a felony. This standard requires evidence of each element of the crime charged or evidence from which the elements may be inferred. Absent an abuse of discretion, a reviewing court should not disturb the district court's bindover decision. An abuse of discretion occurs when the trial court's decision falls outside the range of principle outcomes. [*People v Anderson*, 501 Mich 175, 181-182; 912 NW2d 503 (2018), quoting *People v Seewald*, 499 Mich 111, 116; 879 NW2d 237 (2016) (quotation marks and citations removed).]

In Michigan, the role of a magistrate during a preliminary examination is to determine whether probable cause exists to conclude that a defendant has committed a crime, and therefore will be bound over for trial. *Anderson*, 501 Mich at 183. "Probable cause requires a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *Id*. at 184, quoting *People v Yost*, 468 Mich 122, 126; 659 NW2d 605 (2003). MCL 766.13 "requires a magistrate to consider *all* the evidence presented," and to draw his or her conclusion at the end of the preliminary examination. *Anderson*, 501 Mich at 184 (alteration in original).

I would conclude that the district court's decision to bind Clifford over on charges of first-degree premeditated murder and conspiracy to commit first-degree murder was an abuse of discretion, and on review, the circuit court correctly concluded that the prosecution had failed to establish probable cause to bind Clifford over for trial.

The case against Clifford is not only based on circumstantial evidence, it is also speculative and requires inference upon inference to be made to reach the low threshold of probable cause. First, the prosecution presented evidence that the decedent called Clifford, and that Clifford returned the call shortly before the decedent was killed. Clifford also made a telephone call to Vaughn Robinson shortly after speaking to the decedent. The prosecution argues, and the majority agrees, that a reasonably prudent person could believe that these telephone calls imply nefarious intent; specifically, that Clifford intended for the decedent to be killed. I disagree.

In this case, evidence established without contradiction that the decedent had called Clifford and asked for a ride. Clifford declined, reasoning that because it was after 10:00 p.m., it was too late to pick up the decedent. No evidence was presented about the context of Clifford's communications with Robinson, or the relationship between Clifford and Robinson. I would conclude that without more evidence regarding the context of the phone calls between Clifford and Robinson, or their relationship. it would be impossible for a reasonably prudent person to infer

that Clifford was engaging in a conspiracy to have the decedent killed. Indeed, Robinson had been a codefendant in this case, but all charges were dismissed at the preliminary examination.

The prosecution also submits that a reasonably prudent person could infer Clifford was in the area of the murder based on cell tower evidence. Shortly before the decedent was shot, Clifford's cell phone pinged a cell tower with an address two blocks away from where the decedent was killed. Former Detroit Police Officer, and officer in charge of this case, Eric Raby, testified that based on this evidence, *he* concluded that Clifford was two blocks away from the scene when the murder occurred. The prosecution argues that this data would lead a reasonably prudent person to infer that Clifford had lied to police when he told them he had been home all night, except for when he briefly ran to the store.

However, Officer Raby also testified that although defendant's cell phone pinged the cell tower that was located two blocks away from the scene, Clifford's cell phone could have been further away. Officer Raby agreed that defendant's cell phone could have been anywhere within a pie-slice shaped area extending from the cell tower, and not necessarily two blocks from the scene. This cell phone data was the only evidence offered by the prosecution from which a reasonably prudent person could infer Clifford was involved in the murder, and it is highly speculative.

I find the federal court's approach to cell tower evidence to be instructive in this case. Federal courts have concluded that cell tower evidence is sufficiently reliable when determining a general location. *United States v Machado-Erazo*, 950 F Supp 2d 49 (D DC, 2013); *United States v Reynolds*, 626 Fed Appx 610 (CA 6, 2015). However, cell tower evidence has been rejected as being unreliable when attempting to pinpoint a *specific* location. *United States v Evans*, 892 F Supp 949 (ND Ill, 2012); *United States v Sepulveda*, 115 F 3d 882 (CA 11, 1997). Therefore, I would conclude the cell tower evidence offered in this case to pinpoint Clifford's specific location at the time of the murder is unreliable, and without more, there is simply no evidence linking Clifford to the decedent's murder.

The majority goes on to conclude that the prosecution presented sufficient evidence that Clifford had a motive to conspire to kill the decedent. Specifically, Clifford was the beneficiary of the decedent's $250,000 life insurance policy, and Clifford was the representative payee of the decedent's checking account at Chase Bank. As the majority concedes, there is absolutely no evidence of fraud pertaining to the decedent's life insurance policy, which was obtained over one year before the murder. The policy was applied for online, and once issued, the monthly premiums were paid timely from the decedent's checking account at Chase Bank. Regarding Clifford's status as the representative payee, Clifford described himself as the decedent's foster uncle, and had taken him in after the decedent left his adoptive family. The decedent also lived with Clifford, worked for Clifford, and the two had a good long-standing relationship with each other. Nothing about that factual scenario would lead a reasonably prudent person to infer that Clifford was conspiring to kill the decedent. I would conclude that this evidence, offered to establish motive, is too speculative to establish probable cause.

The majority also reasons that because Clifford was the representative payee on the decedent's checking account, and because funds from that checking account were used to make purchases at a prom dress store, various automotive part stores, and at a funeral home, Clifford

had a motive to kill the decedent. The majority concludes that the purchases described do not make sense for "a cognitively impaired grown man in his mid-twenties." Again, I disagree, and would conclude that without more, these charges on their own do not lead to an inference that Clifford had motive to kill the decedent. Simply because some charges may or may not be out of character for the purchaser does not beg the conclusion that the representative payee on the account was plotting a murder.

I would conclude that the prosecution failed to present sufficient facts to establish probable cause to bind Clifford over on charges of first-degree premeditated murder and conspiracy to commit first-degree murder. On these facts, the trial court's well-reasoned decision to dismiss these charges did not reach the threshold of an abuse of discretion.

## II. REINSTATEMENT OF IDENTITY THEFT CHARGE

The prosecution also argues that the circuit court abused its discretion by denying its motion to reinstate the identity theft charge against Clifford. I disagree, and would affirm.

I first note that I concur with the majority, that the prosecutor's argument that the decedent's limited intellectual ability prevented him from applying for a life insurance policy, without more evidence that decedent was not the person who submitted the application, is too tenuous of an inference to establish probable cause. However, I depart from the majority regarding the "unusual" charges made from the decedent's checking account at Chase Bank.

The majority agrees with the prosecution that some charges, as discussed *supra* are out of line with the decedent's character, and because Clifford was the representative payee on the account, a reasonably prudent person could infer that Clifford committed identity theft. In my view, I reiterate that without evidence that the charges were not actually made or authorized by the decedent, this inference is also too tenuous to establish probable cause to bind over Clifford on the identity theft charge. The prosecution did not present conclusive evidence regarding the degree to which the decedent was cognitively impaired. Moreover, cognitive impairment, to a certain degree, would not preclude an individual from making a prom-related purchase for a friend or girlfriend, or from purchasing automotive parts despite not owning a vehicle. It would also not prevent an individual from applying for life insurance. The prosecution's statements about what the decedent could or could not do due to cognitive impairment are unsupported by the record, particularly in light of the fact that the decedent lived a relatively independent life.

I would conclude that the circuit court did not abuse its discretion by denying the prosecution's motion to reinstate the identity theft charge.

On the basis of the foregoing, in both Docket Nos. 347358 and 349359, I would affirm.

/s/ Kathleen Jansen

-4-