## DOUGLAS COUNTY NATIONAL BANK, Plaintiff–Appellee,

v.

**Linda S. PFEIFF, Defendant–Appellant and Third–Party Plaintiff–Appellant,**

v.

**Everett D. SMITH, William M. Bashaw, Greg Kinney, Thomas M. Vickers, William Griggs and Fred Brooks, individually, Third–Party Defendants–Appellees.**

### No. 90CA0115.

Colorado Court of Appeals,
Div. IV.

Feb. 28, 1991.

Rehearing Denied March 28, 1991.

Popham, Haik, Schnobrich & Kaufman, Ltd., P.C., Gary E. Parish, Sharon R. Jones, Denver, for plaintiff-appellee.

Katch, Wasserman & Jobin, Christine J. Jobin, Dana M. Arvin, Denver, for defendant-appellant and third-party plaintiff-appellant.

No appearance for individual third-party defendants-appellees.

Opinion by Judge DAVIDSON.

Defendant, Linda Pfeiff, appeals the summary judgment entered in favor of plaintiff, Douglas County National Bank, for default on a promissory note. Pfeiff also appeals the dismissal of her affirmative defense and counterclaim against the Bank and the dismissal of her third-party complaint against the individual members of the Bank's board of directors, in which she claimed that they violated 12 C.F.R. § 202.7(d)(1) and § 202.7(d)(5) of Regulation B of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq. (1988) (ECOA) by requiring Pfeiff, as the applicant's spouse, to sign the note. We reverse and remand with directions.

In her complaint, Pfeiff alleges the following facts. Pfeiff's husband was the president and majority shareholder of Designer Properties, Inc. (DPI). Pfeiff had no involvement with the business. In late 1986, her husband, on behalf of DPI, made a request to the Bank for a $95,000 business loan. This request was approved and the funds were dispersed to DPI in December. However, no loan documentation was prepared at that time.

After distribution of the loan proceeds, Pfeiff alleges that the Bank then informed her and her husband that DPI did not qualify for the loan and that, therefore, they were required to sign a $95,000 promissory note in their individual capacities. Pfeiff and her husband signed this note as the "borrowers" and then renewed it on two separate occasions. DPI was not mentioned on either the original or the renewal notes.

In 1988, Pfeiff and her husband defaulted and the Bank brought this action to collect the amount due on the note. After the Pfeiffs failed to answer the Bank's complaint, the Bank moved for default judgment against the parties, which was granted by the court. Pfeiff's husband declared bankruptcy, and the default judgment against Pfeiff, defendant herein, was then vacated by stipulation of the parties.

Pfeiff denied the Bank's claim, alleging that she was not liable on the promissory note because there was no consideration for her signing the note. She also filed an affirmative defense and a counterclaim against the Bank, and a third-party complaint against the individual members of the Bank's board of directors. She alleged

in those pleadings that she was required to sign the promissory note because she was the applicant's spouse and that this violated the provisions of the ECOA prohibiting creditors from requiring a spouse's signature when extending credit.

The Bank and third-party defendants moved to dismiss all of Pfeiff's ECOA claims, and both parties' motions were granted by the trial court. The Bank then moved for summary judgment against Pfeiff and, after limited discovery, the trial court granted this motion. This appeal followed.

## I.

Pfeiff first contends that the trial court erred in granting the Bank's and third-party defendant's motions to dismiss her ECOA claims. We agree.

In their motions to dismiss, the Bank and third-party defendants argued that Pfeiff failed to state a claim upon which relief may be granted pursuant to C.R.C.P. 12(b)(5). Specifically, they argued the following: (1) Pfeiff does not have standing to bring an ECOA claim because she is not an "applicant" as defined by the Act; (2) she does not have standing because she is not the "applicant's spouse" within the meaning of the Act; (3) she is not within the class of persons covered by the Act; and (4) the Act does not apply to her because she was granted credit. The trial court granted these motions without comment.

Initially, we note that when reviewing a motion to dismiss, the court must accept the material allegations of the complaint as true, *McDonald v. Lakewood Country Club*, 170 Colo. 355, 461 P.2d 437 (1969), and the complaint cannot be dismissed unless it appears that the non-moving party is entitled to no relief under any statement of facts which may be proved in support of the claims. *People ex rel. Kinsey v. Sumner*, 34 Colo.App. 61, 525 P.2d 512 (1974).

## A.

█ The Bank and third-party defendants first argue that Pfeiff does not have standing to bring an ECOA claim because she is not an "applicant" as required by the

ECOA to assert a violation of the act. We disagree.

The ECOA provides that:

"It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction ... on the basis of ... marital status...."

5 U.S.C. § 1691(a)(1) (1988).

The ECOA defines an applicant, in pertinent part, as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit...." 15 U.S.C. § 1691a(b) (1988). The implementing regulations to the Act, Regulation B, extend this definition to include "any person who requests or who has received an extension of credit from a creditor, and includes *any person who is or may become contractually liable* regarding an extension of credit. For purposes of § 202.7(d), the term includes guarantors, sureties, endorsers and similar parties." 12 C.F.R. § 202.2(e) (1990). "Contractually liable" means "expressly obligated to repay all debts arising on an account by reason of an agreement to that effect." 12 C.F.R. § 202.2(i) (1990).

When Pfeiff signed the promissory note, she became expressly obligated to repay the loan, and therefore, she has standing as an "applicant" who is contractually liable on the loan.

The Bank and third-party defendants argue, however, that Pfeiff is a guarantor, surety, or similar party on the note and, thus, is expressly excluded from the definition of an applicant.

This argument has no merit. Although the Act's original definition of "applicant" excluded "guarantors, sureties, endorser, and similar parties," *see Morse v. Mutual Federal Savings & Loan Ass'n*, 536 F.Supp. 1271 (D.Mass.1982); *Marine American State Bank v. Lincoln*, 433 N.W.2d 709 (Iowa 1988), the definition of "applicant" was amended in 1985 specifically to include these parties for § 202.7(d) purposes, which is the statutory section Pfeiff asserts was violated.

The official staff commentary regarding this definitional change states that: "The principal effect of the change is to give guarantors and similar parties standing to seek legal remedies when a violation occurs under § 202.7(d)." 50 Fed.Reg. 48020 (1985) (Official Staff Commentary). Therefore, even if Pfeiff is a guarantor, surety, or similar party, she still has standing as an "applicant" under the Act. *See Ford v. Citizens & Southern National Bank,* 700 F.Supp. 1121 (N.D.Ga.1988).

### B.

■ The Bank and third-party defendants next argue that Pfeiff does not have standing to assert an ECOA claim because she was not an "applicant's spouse" within the meaning of the Act. Again, we disagree.

Pfeiff argues that she was required to sign the promissory note as the applicant's spouse in violation of the ECOA. The pertinent regulations promulgated under the Act include 12 C.F.R. § 202.7(d)(1) (1990) which states:

"[A] creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested."

Furthermore, 12 C.F.R. § 202.7(d)(5) (1990) provides that:

"If, under a creditor's standards of creditworthiness, the personal liability of an additional party is necessary to support the extension of the credit requested, a creditor may request a cosigner, guarantor, or the like. The applicant's spouse may serve as an additional party, but the creditor shall not require that the spouse be the additional party."

The Bank and third-party defendants argue, however, that the loan applicant was DPI and, therefore, Pfeiff was not the "applicant's spouse" within the meaning of the Act. We disagree.

The ECOA specifically applies to the extension of business credit. *See* 15 U.S.C. § 1691(a) (1988); 12 C.F.R. § 202.2(g) (1990). The official staff commentary to the 1985 revisions to Regulation B provides that:

"[A] creditor may not take the business applicant's marital status into account, and may not request information about a married applicant's spouse except when the spouse has some connection with the business. A creditor must comply with the rules that prohibit requiring the spouse to guarantee the loan." 50 Fed. Reg. 48019 (1985) (Official Staff Commentary).

If we interpret the business as the sole "applicant," as the Bank and third-party defendants suggest, then § 202.7(d)(1) and § 202.7(d)(5) could never apply to the extension of business credit. Therefore, because we must not interpret a statute so as to frustrate legislative intent, *Frohlick Crane Service, Inc. v. Mack,* 182 Colo. 34, 510 P.2d 891 (1973), we decline to place such a narrow interpretation on the meaning of the "applicant's spouse."

■ Rather, we hold that if an individual applies for credit on behalf of a closely-held business and, in so doing, uses his or her own individual assets to secure this credit, then that individual is also an "applicant" within the meaning of § 202.7(d). *See Marine American State Bank v. Lincoln, supra* (bank violated ECOA by requiring wife's signature on promissory note extending loan to husband's company).

Insofar as the Bank and third-party defendants rely on *Bank of America National Trust & Savings Ass'n v. Hotel Rittenhouse Associates,* 595 F.Supp. 800 (E.D. Penn.1984) to support their interpretation, this reliance is misplaced. Although *Bank of America* also involved an ECOA violation brought by a wife who became contractually liable on credit extended to her husband's business, that court found that the husband was a guarantor on the note. Therefore, because the credit was extended before the 1985 amendments to the Act, the court held that the husband was expressly excluded from the definition of an "applicant," and *ipso facto,* the wife could not be an "applicant's spouse." In addi-

tion, the court in *Bank of America* stated that it also was denying the ECOA claim because it found that the husband and wife offered to execute a joint guarantee, and thus, the bank was authorized to require the wife's signature on the note. *See* 12 C.F.R. § 202.7(d)(1) (1990).

Here, there is no evidence that Pfeiff's husband was a guarantor, nor is there any evidence in the record that Pfeiff and her husband were joint applicants. The record, however, does reveal that the Bank's evaluation of whether to extend credit to DPI was based, at least in part, on the individual creditworthiness of Pfeiff's husband. Therefore, under these circumstances, we conclude that Pfeiff is the "applicant's spouse" within the meaning of the Act.

### C.

■ The Bank and third-party defendants next argue, in effect, that Pfeiff is not within the class of persons covered by the Act. Although they are correct that one of the main purposes behind the original adoption of the ECOA was to eradicate credit discrimination against married women whom creditors traditionally refused to consider for individual credit, *Markham v. Colonial Mortgage Service Co. Associates, Inc.*, 605 F.2d 566 (D.C.Cir.1979), the plain language of the statute also prohibits discrimination against *any* applicant with respect to *any* aspect of a credit transaction. *Markham v. Colonial Mortgage Service Co., supra.*

■ Furthermore, as demonstrated by the 1985 amendments, one of the present purposes of the Act is also to protect those guarantors or sureties who suffer the result of discrimination against others. Therefore, we conclude that Pfeiff's claims come within the scope of the Act. *See Cherry v. Amoco Oil Co.*, 481 F.Supp. 727 (N.D.Georgia 1979).

### D.

■ Finally, the Bank and third-party defendants argue that the Act does not apply to Pfeiff because she was actually granted credit. We disagree.

An individual need not be denied credit in order to bring an ECOA action. As discussed above, the Act specifically includes third parties who were required to become obligated on extensions of credit because they were the applicant's spouse. *See* 12 C.F.R. § 202.7(d)(1), (5) (1990).

Therefore, accepting Pfeiff's allegations as true, *see McDonald v. Lakewood Country Club, supra,* we conclude that she has stated a claim upon which relief can be granted, and thus, the trial court erred in granting the motions to dismiss.

### II.

Pfeiff also contends that the trial court erred in finding that there was adequate consideration for her signing the promissory note and, thus, in granting summary judgment in favor of the Bank. We perceive no error in the court's ruling concerning the existence of consideration; however, since we have above reversed the court's dismissal of the affirmative defense, counterclaim, and third-party complaint based on the ECOA, we also reverse the summary judgment.

Here, it is undisputed that Pfeiff signed the note in her individual capacity without any qualifying designations. Therefore, absent other valid defenses, she is individually liable as a co-maker on the note. *See Foothills Holding Corp. v. Tulsa Rig, Reel & Manufacturing Co.*, 155 Colo. 232, 393 P.2d 749 (1964); *Rink–A–Dinks v. TNT Motorcycles, Inc.*, 655 P.2d 431 (Colo.App. 1982).

■ Further, it is no defense that one co-maker on a promissory note did not receive consideration if consideration was received by another co-maker or his designee. *Bloom v. Pioneer State Bank*, 75 Colo. 28, 223 P. 750 (1924); *Luby v. Jefferson County Bank*, 28 Colo.App. 441, 476 P.2d 292 (1970). Thus, the trial court's ruling in this regard was proper, and this issue need not be litigated further on remand.

Therefore, the dismissal of Pfeiff's affirmative defense, counterclaim, and third-party complaint is reversed, and consequently, the summary judgment is also re-

versed, and the cause is remanded for further proceedings.

METZGER and ROTHENBERG, JJ., concur.