**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of The Merchants Bank, Plaintiff,**

v.

**MEDMARK, INC., et al., Defendants.**

**No. 94–2394–KHV.**

United States District Court, D. Kansas.

Aug. 9, 1995.

John M. McFarland, Gage & Tucker, Overland Park, KS, Major W. Park, Jr., Terry J. Brady, Janet L. Chleborad, Gage & Tucker, Kansas City, MO, for plaintiff.

Don R. Lolli, Michael S. Crowe, Steven D. Lance, Beckett, Lolli, Bartunek & Beckett, Kansas City, MO, for defendants.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

This action comes before the Court on *Defendant Mary Sue Shalberg's Motion for Summary Judgment* (Doc. # 95) filed June 23, 1995, and *Plaintiff's Motion for Stay of Proceedings as to Defendant Mary Sue Shalberg and Suggestions in Support Thereof* (Doc. # 134) filed August 7, 1995. The Federal Deposit Insurance Corporation ("FDIC"), as Receiver of The Merchants Bank (the "Bank") seeks to recover, *inter alia*, on a guaranty executed by defendant Mary Sue Shalberg on behalf of Medmark, Inc. Mrs. Shalberg asserts that the FDIC's claim against her is barred because the Bank violated the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §§ 1691 *et seq.* The FDIC contends that Mrs. Shalberg's ECOA defense is barred by the statute of limitations and her failure to exhaust administrative remedies.[1]

▊ Rule 56(c) the Federal Rules of Civil Procedure directs the entry of summary judgment in favor of the party who "[shows] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A principal purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The court's inquiry is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

▊ When deciding a summary judgment motion, the Court considers all evidence and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The nonmoving party, however, "may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990). Thus, summary judgment may be entered "against any party who fails to make a sufficient showing to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

## A. FACTS

The following facts are undisputed.[2] On November 9, 1988, Bruce Shalberg executed an unconditional guaranty of Medmark's past

---

1. The FDIC makes these arguments in its response to Mrs. Shalberg's motion for summary judgment, as well as in *Plaintiff's Motion for Summary Judgment as to Defendant Mary Sue Shalberg* (Doc. # 79) filed June 19, 1995. On August 7, 1995, the Court entered an order overruling the FDIC's motion, but reserved ruling on the FDIC's claims as to Mrs. Shalberg's ECOA defense. In light of the Court's ruling herein, that portion of the FDIC's motion is hereby overruled.

2. In its response to Mrs. Shalberg's motion for summary judgment, the FDIC has responded to several facts asserted by Mrs. Shalberg as "controverted but immaterial." Except with respect to fact paragraph 6, the FDIC does not set forth specific facts or refer with particularity to those portions of the record upon which it relies. Therefore, in accordance with Rule 206 of the Rules of Practice and Procedure of this Court, the Court must deem admitted those facts which plaintiff claims are "controverted but immaterial." *See also Applied Genetics,* 912 F.2d at 1241 (nonmoving party must set forth specific facts showing genuine issue for trial).

and future debt to the Bank.[3] As a condition of a loan to Medmark, the Bank also required Mrs. Shalberg to sign the guaranty—even though Mr. Shalberg was independently creditworthy to guarantee the loan amount. Mrs. Shalberg has never owned an interest in Medmark, nor has she ever participated in the operations of Medmark.

At different times throughout 1991, while Mrs. Shalberg's guaranty was in effect, the Bank extended loans evidenced by promissory notes executed in the name of Medmark. At the time the promissory notes were executed, Mr. Shalberg was a director of Medmark. As of June 19, 1995, total principal and interest due under the promissory notes amounted to $1,769,300.01.

## B. DISCUSSION

The ECOA prohibits creditors from discriminating "against any [credit] applicant, with respect to any aspect of a credit transaction . . . on the basis of . . . sex or marital status." 15 U.S.C. § 1691(a)(1). Under Regulation B, promulgated by the Federal Reserve Board pursuant to ECOA Section 1691(a), "a creditor shall not require the signature of an applicant's spouse or other person, other than a joint applicant, on any credit instrument if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested." 12 C.F.R. § 202.7(d).

■ ECOA Section 1691(a), (b) and (d) provides an aggrieved applicant the right to recover actual and punitive damages, as well as costs and attorneys' fees, for any violation. The term applicant encompasses any person who is or may become contractually liable regarding an extension of credit, including guarantors. *See* 12 C.F.R. 202.2(e). In addition, ECOA Section 1691e(c) allows courts to grant equitable and declaratory relief necessary to enforce the requirements imposed by the statute.

■ The statute of limitations to bring an ECOA claim is two years from the date of violation. 15 U.S.C. § 1691e(f). The FDIC claims that Mrs. Shalberg's purported ECOA defense is barred because two years have expired since the date of the alleged violation. Although a split of authority exists on this issue, *compare FDIC v. 32 Edwardsville, Inc.*, 873 F.Supp. 1474, 1480 (D.Kan.1995), *with Integra Bank/Pittsburgh v. Freeman*, 839 F.Supp. 326, 329–30 (E.D.Pa.1993), the Court is persuaded that the appropriate analysis is that set forth by the Third Circuit Court of Appeals in *Silverman v. Eastrich Multiple Investor Fund, L.P.*, 51 F.3d 28 (3rd Cir.1995).[4] Thus, the Court concludes that Mrs. Shalberg can use the alleged ECOA violation defensively to obtain relief from her obligation under the guaranty, even though the statute of limitations for bringing an action for damages under the statute has expired.

■ The FDIC further contends that Mrs. Shalberg's purported ECOA defense is barred or should be stayed because she has failed to file an administrative claim pursuant to 12 U.S.C. § 1821(d)(3)(B) and (C). Because Mrs. Shalberg's ECOA defense constitutes an affirmative defense, however, Section 1821(d) does not require that she exhaust administrative remedies. *See RTC v. Love*, 36 F.3d 972, 977–78 (10th Cir.1994). Accordingly, the FDIC's motion to stay proceedings so that Mrs. Shalberg may exhaust administrative remedies must be overruled.

■ The FDIC does not expressly deny that the Bank violated the ECOA in its dealings with Mrs. Shalberg. It sets forth no facts which controvert Mrs. Shalberg's assertion that the Bank required her to sign the guaranty as a condition of the loan to Medmark—even though her husband was independently creditworthy—and it does not dispute that in doing so, the Bank discriminated against Mrs. Shalberg on the basis of marital status. The FDIC merely asserts, incorrect-

---

3.   Under the terms of the guaranty, the Shalbergs' liability is unlimited in amount and their obligations continue until the Bank receives written notice to discontinue the guaranty. Prior to February 6, 1992, the Shalbergs did not give written notice to the Bank to discontinue the guaranty.

4.   In the interest of expediting its ruling on this motion, and facilitating the status conference scheduled for August 9, 1995, the Court foregoes extended discussion of this issue and adopts the reasoning and analysis set forth in *Silverman*.

ly, that Mr. Shalberg's independent credit-worthiness is immaterial. Regulation B specifically provides that a creditor may not require the signature of an applicant's spouse if the applicant qualifies under the creditor's standards of creditworthiness for the amount and terms of the credit requested. *See* 12 C.F.R. § 202.7(d). The FDIC argues that the Bank "obviously" did not believe Mr. Shalberg to be independently creditworthy because it required other individuals (in addition to Mrs. Shalberg) to guarantee the Medmark debt. Oddly, the FDIC cites no deposition testimony, affidavit, or other record evidence in support of its claim. The record contains no evidence that Mr. Shalberg was not creditworthy, in his own right, in the Bank's eyes. Summary judgment in favor of Mrs. Shalberg is therefore appropriate. *See Riggs Nat'l Bank of Washington, D.C. v. Linch,* 36 F.3d 370, 374 (4th Cir.1994) (determinative factual issue on ECOA claim is whether bank made determination that husband was not independently creditworthy before it requested wife to guarantee loan).

**IT IS THEREFORE ORDERED** that *Defendant Mary Sue Shalberg's Motion for Summary Judgment* (Doc. # 95) filed June 23, 1995 should be and hereby is sustained, and *Plaintiff's Motion for Stay of Proceedings as to Defendant Mary Sue Shalberg and Suggestions in Support Thereof* (Doc. # 134) filed August 7, 1995 should be and hereby is overruled.