■ CADLE COMPANY, Respondent, v SHRAGE NEWHOUSE, Also Known as SHRAGA NEWHOUSE, Defendant, and JUDITH BRACH, Appellant. [— NYS2d —] —In an action to recover payment due under the terms of a promissory note and personal guaranty, the defendant Judith Brach appeals from an order and judgment (one paper) of the Supreme Court, Kings County (Dowd, J.), dated June 27, 2001, which upon granting the plaintiff's motion for summary judgment and denying her cross motion for summary judgment dismissing the complaint, or alternatively, for leave to serve an amended answer, is in favor of the plaintiff and against her in the principal sum of $1,799,399.41.

Ordered that the order and judgment is modified, on the law, by (1) deleting the provision thereof granting the plaintiff's motion for summary judgment, and (2) deleting the provision therefor which is in favor of the plaintiff and against the defendant in the principal sum of $1,799,399.41, and substituting therefor a provision denying the motion; as so modified, the order and judgment is affirmed, with one bill of costs to the appellant.

In 1989 the appellant's former husband, Ernesto Brach (hereinafter Ernesto), borrowed $50,000 from the First Women's Bank of New York (hereinafter the First Women's Bank). Ernesto was a part owner of a business known as Mademoiselle Knitwear, 75% of which was owned by the codefendant Shrage Newhouse, also known as Shraga Newhouse. In 1989 the appellant signed a guaranty in connection with this $50,000 loan. It is unclear whether that 1989 loan was for personal or business purposes. Pursuant to its terms, the guaranty pledged that the appellant would pay all of Ernesto's liabilities to the lender "now or hereafter existing."

The $50,000 loan was repaid in 1990 as part of a new loan to

Ernesto in the amount of $75,000 from the successor of the First Women's Bank, the First New York Bank for Business (hereinafter FNYBB). The appellant did not execute a guaranty in connection with this loan.

In 1990 Ernesto won a $6 million New York State lottery prize, payable in annual installments of approximately $285,000 over 20 years. Thereafter, in 1991, Ernesto negotiated a $2 million loan from FNYBB. Proceeds from the new loan were used to pay off the $75,000 loan. The new loan was guaranteed by the codefendant Newhouse, and was for the benefit of Mademoiselle Knitwear. Ernesto sought to pledge his lottery winnings as security for that loan, but was unable to do so (*see Wolf v Brach,* 241 AD2d 417, 418). Ultimately, the loan went into default. FNYBB was later taken over by the Federal Deposit Insurance Corporation (hereinafter FDIC).

In August 1995 the plaintiff purchased the loan pursuant to an assignment from the FDIC. Additionally, in or about 1995, Ernesto and the appellant were divorced.

In September 1995 the plaintiff commenced this action against Newhouse and the appellant on their guaranties. The plaintiff alleged that the appellant's 1989 guaranty applied to the 1991 loan. The plaintiff successfully obtained summary judgment as against Newhouse, and sought the same relief as against the appellant. The Supreme Court granted the plaintiff's motion. We now modify and deny that motion.

The Supreme Court erred insofar as it granted the plaintiff's motion for summary judgment against the appellant with respect to the 1989 guaranty. In opposition to the plaintiff's prima facie showing of entitlement to summary judgment, the appellant demonstrated an issue of fact as to whether the 1989 guaranty was enforceable, or whether it was obtained in violation of the appellant's rights pursuant to the Equal Credit Opportunity Act (*see* 15 USC § 1691 *et seq.*; 12 CFR part 202; *F.D.I.C. v Medmark, Inc.,* 897 F Supp 511; *Western Star Fin. v White,* 7 P3d 502 [Okla Civ App]). Moreover, the appellant adduced credible evidence tending to establish that she suffers from schizophrenia and lacked the capacity to enter into the 1989 guaranty and appreciate that it might someday bind her to pay a future debt of her now former husband with regard to a business venture that had not been conceived at that time.

The plaintiff's invocation of the D'Oench Duhme doctrine (*see D'Oench, Duhme & Co. v Federal Deposit Ins. Corp.,* 315 US 447), is of no moment. The parties dispute the continued viability thereof in light of the enactment of the Financial Institutions Reform, Recovery and Enforcement Act (*see* 12

USC § 1823 [e]; *O'Melveny & Myers v F.D.I.C.,* 512 US 79; *Inn at Saratoga Assoc. v F.D.I.C.,* 60 F3d 78). That doctrine confers holder in due course status upon the FDIC to invalidate secret agreements between borrowers and defunct lenders (*see F.D.I.C. v Deglau,* 207 F3d 153, 170; *Federal Sav. & Loan Ins. Corp. v Murray,* 853 F2d 1251, 1256). However, we need not decide this issue as there were no agreements here between the borrowers or the guarantors and the lender concerning the $2 million loan. To the contrary, the appellant executed the guaranty in 1989, two years prior to the making of the $2 million loan.

Additionally, there is a genuine and material issue of fact as to whether the 1989 guaranty was one of the collateral documents actually assigned to the plaintiff in the first place. Moreover, while the guaranty contains very broad language tending to establish its applicability to Ernesto's future obligations, it is not clear that the guaranty was intended to apply to anything but the initial $50,000 indebtedness. Not one document in the record from either the First Women's Bank or FNYBB expressly links the 1989 guaranty to the 1991 loan. In short, numerous issues of fact require resolution at trial before the plaintiff can establish its entitlement to relief under the guaranty entered into by the appellant. S. Miller, J.P., Krausman, Luciano and Cozier, JJ., concur.