# IN THE SUPREME COURT OF IOWA

No. 08–1106

Filed May 14, 2010

**BANK OF THE WEST**, Successor-In-Interest
to Commercial Federal Bank,

 Appellant,

vs.

**PHYLLIS J. KLINE** and **CHRISTINE WALTERS,**

 Appellees.

Appeal from the Iowa District Court for Dallas County, Dale B. Hagen, Judge.

A bank appeals from a district court order granting the debtors' motions for summary judgment. **AFFIRMED.**

Thomas H. Burke, John F. Fatino, and Nicholas Cooper of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

David Swinton of Belin Lamson McCormick Zumbach Flynn, a Professional Corporation, Des Moines, for appellee Kline.

Jerrold Wanek of Garten & Wanek, Des Moines, for appellee Walters.

**WIGGINS, Justice.**

In this appeal, we must decide if two debtors can use the Equal Credit Opportunity Act (ECOA) as an affirmative defense to an action by a creditor to collect a debt. Because we find the debtors can use the ECOA in that manner and there is no genuine issue of material fact as to the creditworthiness issue raised by the creditor on appeal, we affirm the judgment of the district court granting the debtors' motions for summary judgment.

## I. Background Facts and Proceedings.

In consideration of monies loaned to Acme Land Company, L.L.C., Acme made, executed, and delivered a promissory note in the initial principal sum of five million dollars with interest accruing at an initial rate of 4.75% per annum to Commercial Federal Bank (CFB). To secure payment on the note, on the same date, Acme made, executed, and delivered in favor of CFB a construction mortgage that encumbered certain real property located in Dallas County. Additionally, John C. Kline, Inc., Randy Walters, Inc., John C. Kline, Phyllis J. Kline, Randal L. Walters, and Christine Walters each made, executed, and delivered to CFB an unlimited commercial guaranty of all the obligations Acme owed to CFB. Each guaranty obligated the guarantor for any and all of Acme's indebtedness to CFB.

Thereafter, CFB, Commercial Federal Corporation (CFC), a Nebraska corporation, and Bank of the West, a California banking corporation, entered into a merger agreement. The merger caused both CFB and CFC to merge into Bank of the West, leaving Bank of the West as the only surviving corporation. Under the terms of the merger, Bank of the West acquired all the assets of CFB, including the promissory

note, construction mortgage, and unlimited commercial guaranties executed in the Acme transaction.

Acme failed to repay the loan and consequently was in default pursuant to the terms of the promissory note. Bank of the West filed a mortgage foreclosure petition without redemption and suit on guaranties against Acme, John C. Kline, Inc., Randy Walters, Inc., John C. Kline, Phyllis J. Kline, Randal L. Walters, and Christine Walters. Christine answered the petition and alleged as an affirmative defense that the ECOA barred Bank of the West's claims against her. Christine also asserted her alleged ECOA violation as a counterclaim. Specifically, Christine alleged that Bank of the West obtained her unlimited commercial guaranty solely because she was the spouse of Randal Walters and not because other parties obligated to the bank were not sufficiently creditworthy to satisfy Acme's obligations. Thus, Christine claimed Bank of the West unlawfully discriminated against her based on her marital status in violation of the ECOA, rendering her guaranty void and unenforceable.

Phyllis also filed an answer to Bank of the West's petition. Although Phyllis did not assert an alleged ECOA violation as either an affirmative defense or a counterclaim, she did file a cross-claim against her ex-husband, John C. Kline, for failing to indemnify and hold her harmless from her guaranty pursuant to the terms of their dissolution decree. In response to the cross-claim, John filed a counterclaim for indemnification against Bank of the West, alleging that the bank violated the ECOA by obtaining Phyllis's guaranty solely because she was his spouse. Thus, John claimed Bank of the West unlawfully discriminated against Phyllis on the basis of her marital status in violation of the ECOA, rendering her guaranty void and unenforceable. Phyllis

eventually filed an amended answer asserting the bank's violations of the ECOA as an affirmative defense and a counterclaim for declaratory and equitable relief.

In response to both Christine's and John's counterclaims, Bank of the West claimed as affirmative defenses: (1) Christine, Phyllis, and John could not raise an ECOA violation claim because they do not qualify as "applicants" under the ECOA, and (2) the two-year statute of limitations under the ECOA has expired barring Christine's, Phyllis's, and John's ECOA violation claims.

The parties filed cross-motions for summary judgment. The district court ruled on Bank of the West's motion for summary judgment as well as the defendants' cross-motions for summary judgment. The district court granted the bank's motion as to defendants, Acme, Randy Walters, Inc., John C. Kline, and Randal L. Walters and entered judgment against them on the notes and guaranties. As to Christine and Phyllis, the court held they both could assert the ECOA because the term "applicant" as used in the act includes guarantors. The court further held the two-year statute of limitations began to run when Christine and Phyllis signed their guaranties. Thus, the two-year statute of limitations had run, barring Christine's and Phyllis's offensively asserted ECOA counterclaims. Nevertheless, the court held Christine and Phyllis could still assert Bank of the West's ECOA violations as affirmative defenses.

As a result, the district court appeared to dismiss Christine's and Phyllis's ECOA counterclaims, allow Christine and Phyllis to raise the ECOA violations as affirmative defenses, and grant the defendants' cross-motions for summary judgment as it pertained to Christine's and Phyllis's ECOA affirmative defenses—rendering Christine's and Phyllis's unlimited commercial guaranties void and unenforceable.

Apparently, the parties were confused as to the effect of the district court's summary judgment ruling. Phyllis filed a motion to amend the court's ruling to confirm the dismissal of Bank of the West's petition with regard to Christine and Phyllis. Likewise, Bank of the West filed a motion to enlarge or amend the district court's ruling. In its motion, the bank sought a clarification that the district court only ruled Christine and Phyllis could assert the alleged ECOA violations as affirmative defenses, but did not substantively dispose of the bank's claims against Christine and Phyllis as a matter of law. Additionally, the bank moved the court to amend its ruling to reflect that there exists a question of material fact regarding whether or not Christine's and Phyllis's husbands were creditworthy at the time Christine and Phyllis executed their guaranties.

Meanwhile, both parties proceeded to prepare for trial. Bank of the West filed its trial brief. Prior to the trial date, the district court ruled on the parties' motions for clarification of the court's summary judgment ruling. The court stated that in its summary judgment ruling it concluded there were no genuine issues of material fact as to the validity of Christine's and Phyllis's ECOA affirmative defenses. Thus, the court stated that it should have dismissed Bank of the West's actions against Christine and Phyllis. Consequently, the court granted Christine's and Phyllis's cross-motions for summary judgment and dismissed Bank of the West's petition as to Christine and Phyllis. This ruling disposed of all issues in the case, and there was no need for a trial. Bank of the West filed a notice of appeal from the district court's ruling dismissing its claims against Christine and Phyllis.

## II. Issues.

This case presents three issues: (1) whether Christine and Phyllis can assert an ECOA claim and/or affirmative defense, (2) whether Christine and Phyllis can assert an ECOA violation as an affirmative defense to void their guaranties even after the statute of limitations for an offensive claim under the ECOA has run, and (3) whether there remains disputed material facts as to whether Bank of the West violated the ECOA by requiring Christine's and Phyllis's personal guaranties.

## III. Scope of Review.

We review an order granting summary judgment for correction of errors at law. *Hills Bank & Trust Co. v. Converse*, 772 N.W.2d 764, 771 (Iowa 2009). Summary judgment is appropriate if the moving party has met his or her burden of showing the nonexistence of a material fact. *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 434 (Iowa 2008). "The nonmoving party [is] afforded every legitimate inference that can be reasonably deduced from the evidence, and if reasonable minds can differ on how the issue should be resolved, a fact question is generated" and summary judgment should not be granted. *Hills Bank & Trust Co.*, 772 N.W.2d at 771; *Sweeney v. City of Bettendorf*, 762 N.W.2d 873, 877 (Iowa 2009). Thus, our review is limited to the determination of whether a genuine issue of material fact exists and whether the district court applied the correct law. *Hills Bank & Trust Co.*, 772 N.W.2d at 771. If no genuine issue of material fact exists, our decision will turn on our construction of the ECOA. *State ex rel. Claypool v. Evans*, 757 N.W.2d 166, 169 (Iowa 2008). We review questions of statutory construction for correction of errors at law. *Estate of Ryan v. Heritage Trails Assocs., Inc.*, 745 N.W.2d 724, 728 (Iowa 2008).

**IV. Whether Christine and Phyllis Can Assert Violations of the ECOA.**

Bank of the West argues the district court erred by holding Christine and Phyllis could assert violations of the ECOA. The district court concluded Christine and Phyllis could assert ECOA violations because they were required to execute personal guaranties even though there was no prior determination by CFB that their spouses were not sufficiently creditworthy. Bank of the West claims Christine and Phyllis cannot assert ECOA violations because they do not qualify as "applicants" under the ECOA.

The ECOA provides that,

> It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . on the basis of race, color, religion, national origin, sex or *marital status*, or age (provided the applicant has the capacity to contract).

15 U.S.C. § 1691(a)(1) (2000) (emphasis added). The ECOA defines "applicant" as, "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b). Viewing this definition of "applicant" without more, it appears Bank of the West's claim has merit. In this case, Acme was the only defendant that applied to a creditor for credit. Thus, under the ECOA definition only Acme would qualify as an "applicant."

Prior to 1986, we would have agreed with the bank. *See Marine Am. State Bank of Bloomington, Ill. v. Lincoln*, 433 N.W.2d 709, 713 (Iowa 1988) (holding a spouse who guaranteed a loan in 1981 was not an applicant under the ECOA). However, the ECOA authorizes the Board of Governors of the Federal Reserve System (Board) to enact regulations to

carry out the purposes of the ECOA. 15 U.S.C. § 1691b(a)(1). The regulations promulgated by the Board are codified in Regulation B. *See* 12 C.F.R. §§ 202.1–.16 (2004). In 1986, the Board amended the definition of "applicant" under Regulation B to provide:

> *Applicant* means any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit. *For purposes of § 202.7(d), the term includes guarantors,* sureties, endorsers, and similar parties.

12 C.F.R. § 202.2(e) (emphasis added). Originally, Regulation B's definition of "applicant" excluded guarantors. *Douglas County Nat'l Bank v. Pfeiff*, 809 P.2d 1100, 1102 (Colo. Ct. App. 1991); Kevin A. Palmer & Michael H. Malin, Jr., *ECOA, Regulation B, and the Spousal Guaranty: Recent Developments*, 115 Banking L.J. 357, 359 (1998). The primary purpose of the 1986 amendment was " 'to give guarantors and similar parties standing to seek legal remedies when a violation occurs under § 202.7(d).' " *Pfeiff*, 809 P.2d at 1103 (quoting Final Rule Revising Regulation B, 50 Fed. Reg. 48,018, 48,020 (Nov. 20, 1985) (Official Staff Commentary)); *see also* Joel D. Stafford, *Consumer Protection: The Equal Credit Opportunity Act: Guarantors as Applicants—Did the Cost of a Violation Go Up?*, 40 Okla. L. Rev. 431, 442–43 (1987) [hereinafter "*Stafford Article*"] (recognizing the amendment provides regulatory standing to a guarantor to sue for violations of Regulation B's cosignature rules). Consequently, for purposes of § 202.7(d), a guarantor expressly falls within the meaning of "applicant" and therefore can assert an ECOA violation. 12 C.F.R. § 202.2(e); *see also F.D.I.C. v. Medmark, Inc.*, 897 F. Supp. 511, 514 (D. Kan. 1995) (stating "[t]he term 'applicant' encompasses any person who is or may become contractually liable regarding an extension of credit, including guarantors"); *Pfeiff*, 809 P.2d

at 1102–03 (same); *Lincoln*, 433 N.W.2d at 712–13 (recognizing Regulation B's definition of "applicant" was amended so as to include guarantors).

In this case, Christine's and Phyllis's alleged ECOA violations arise under Regulation B § 202.7(d) because they claim the bank illegally obtained their spousal guaranties. *See* 12 C.F.R. § 202.7(d) (regulating when a creditor may require a spouse's signature); Official Staff Interpretations, 12 C.F.R., Part 202, Supp. I, § 202.7(d)(6) (stating section 202.7(d) bars a creditor from requiring the signature of a guarantor's spouse just as it bars a creditor from requiring the signature of an applicant's spouse). Thus, as guarantors, Christine and Phyllis are "applicants" under the ECOA and can assert alleged ECOA violations against Bank of the West.

**V. Whether Christine and Phyllis Can Assert an ECOA Violation as an Affirmative Defense to Void Their Guaranties Even After the Statute of Limitations for an Offensive Claim Under the ECOA Has Run.**

**A. Positions Regarding a Debtor's Use of an Alleged Violation of the ECOA After the Applicable Statute of Limitations Has Run.** Although Bank of the West agrees with the district court that the ECOA's statute of limitations bars Christine's and Phyllis's counterclaims, Bank of the West argues that Christine's and Phyllis's ECOA affirmative defenses are also barred under the ECOA as a matter of law.[1] Bank of

---

[1]The ECOA has a two-year statute of limitations, which begins to run "from the date of the occurrence of the violation." 15 U.S.C. § 1691e(f). We have recognized that a violation occurs, and the statute begins to run, when a creditor improperly requires a spouse's signature in violation of the ECOA. *Lincoln*, 433 N.W.2d at 712 (stating, the ECOA's focus "is upon the time of the discriminatory actions, not the time at which the consequences of the action became painful"). The district court held Christine's and Phyllis's ECOA counterclaims were time-barred because they executed their guaranties on May 26, 2004, but did not assert their ECOA counterclaims until more than two years later (i.e., August 28, 2007, for Christine and September 11, 2007, for Phyllis). Neither Christine nor Phyllis raised this issue on appeal. Therefore, we will not address this issue on appeal.

the West argues that Christine and Phyllis cannot assert alleged ECOA violations as affirmative defenses because allowing a debtor to assert a violation as an affirmative defense is not the proper method of recovery under the ECOA. In dicta, we have said, "the debtor may assert the ECOA claim in the nature of recoupment." *Lincoln*, 433 N.W.2d at 712. We have never decided or commented on whether a debtor can use an ECOA claim as an affirmative defense. Currently, there is a split of authority among federal and state jurisdictions on the issue of whether a debtor can assert an alleged ECOA violation after the statute of limitations has run on an offensive action for damages under the ECOA. The disagreeing camps have staked out three general positions on the use of an alleged violation of the ECOA after the statute of limitations has run.

1. *Position #1: A debtor can only assert an ECOA violation as a counterclaim.* A number of state and federal courts have held the only remedy provided for an ECOA violation is an offensive action for damages brought within two years of the violation. *See* 15 U.S.C. § 1691e(a), (b), (d), (f) (providing expressly for a civil cause of action for actual and punitive damages as well as attorney fees and costs against a creditor who violates the ECOA). Consequently, these courts have refused to recognize the validity of an ECOA violation asserted as an affirmative defense. *See, e.g., F.D.I.C. v. 32 Edwardsville, Inc.*, 873 F. Supp. 1474, 1480 (D. Kan. 1995) (holding a plaintiff cannot assert a violation of the ECOA as an affirmative defense); *Riggs Nat'l Bank of Washington, D.C. v. Linch*, 829 F. Supp. 163, 169 (E.D. Va. 1993) (same), *aff'd*, 36 F.3d 370 (4th Cir. 1994); *CMF Va. Land, L.P. v. Brinson*, 806 F. Supp. 90, 93 (E.D. Va. 1992) (holding that an ECOA violation is not properly asserted as an

affirmative defense to liability and should instead take the form of a compulsory counterclaim).

This position rests on two grounds. First, these jurisdictions argue the language of the ECOA does not expressly or implicitly afford relief by way of an affirmative defense. *See, e.g., Linch*, 829 F. Supp. at 169; *Brinson*, 806 F. Supp. at 95–96.

> The ECOA, by its own terms, sets forth the contemplated remedy under the statute—a federal civil action for actual damages, punitive damages not to exceed $10,000, attorneys' fees or injunctive relief. Nowhere does it afford relief by way of an affirmative defense. A counterclaim certainly can be premised upon a violation of the ECOA, but such a violation cannot be alleged to avoid basic liability on the underlying debt.

*Brinson*, 806 F. Supp. at 95. Second, these jurisdictions conclude neither the ECOA nor the case law supports the proposition that an ECOA violation asserted as an affirmative defense may render an instrument or the underlying obligation void. *Diamond v. Union Bank & Trust of Bartlesville*, 776 F. Supp. 542, 544 (N.D. Okla. 1991) (stating "there is no authority, in statutory language or case law, for the proposition that a violation of the ECOA renders an instrument void"); *accord 32 Edwardsville, Inc.*, 873 F. Supp. at 1480 (finding section 1691e(c) of the ECOA does not grant courts the power to invalidate underlying obligations); *Brinson*, 806 F. Supp. at 95 (stating "[i]nvalidation of the debt itself is a remedy too drastic for the Court to implement simply by reading between the lines of the ECOA"). Thus, these courts are wary of granting a sweeping new affirmative defense remedy under the ECOA that a debtor may use to invalidate the entire underlying debt when no language providing for such a defense is expressly or implicitly contained within the ECOA. *See* Ami L. Dilorenzo, *Regulation B: How Lenders Can Fight Back Against the Affirmative Use of*

*Regulation B*, 8 U. Miami Bus. L. Rev. 215, 220 (2000) [hereinafter "*Dilorenzo Article*"] (stating the rationale behind not allowing Regulation B as an affirmative defense). As a result, while these courts recognize a plaintiff can offensively assert an ECOA violation as a civil action to recover damages against a creditor, they refuse to recognize an ECOA violation asserted as an affirmative defense.

2. *Position #2: A debtor can assert an ECOA violation as an affirmative defense in the nature of recoupment.* Many federal and state jurisdictions have allowed a plaintiff to assert an ECOA violation as an affirmative defense, even after the two-year statute of limitations has run for an offensive ECOA claim, by way of recoupment. *See, e.g., Bolduc v. Beal Bank, SSB*, 167 F.3d 667, 672 (1st Cir. 1999) (holding the recoupment doctrine could allow a spouse to assert an ECOA affirmative defense against a creditor even after the statute of limitations had run); *Silverman v. Eastrich Multiple Investor Fund, L.P.*, 51 F.3d 28, 32 (3d Cir. 1995) (reasoning, at least in part, that a plaintiff could proceed with a defensive ECOA claim after the statutory period had run, by way of the right of recoupment); *Integra Bank/Pittsburgh v. Freeman*, 839 F. Supp. 326, 330 n.6 (E.D. Pa. 1993) (recognizing an action by way of recoupment, which essentially functions as a defense, will lie where a party possesses an otherwise time-barred ECOA claim); *In re Remington*, 19 B.R. 718, 721 (Bankr. D. Colo. 1982) (holding, even though an affirmative action for damages is barred, the debtor may assert an ECOA violation defensively in the nature of recoupment); *PNC Bank, Del. v. Turner*, 659 A.2d 222, 225 (Del. Super. Ct. 1995) ("Although an affirmative action is time barred under the ECOA . . . , the defendant may still assert recoupment as an affirmative defense."); *Machias Sav. Bank v. Ramsdell*, 689 A.2d 595, 599 (Me. 1997) (same); *Mundaca Inv.*

*Corp. v. Emery*, 674 A.2d 923, 925 (Me. 1996) (same); *F.D.I.C. v. Notis*, 602 A.2d 1164, 1166 (Me. 1992) (same).

The doctrine of recoupment "allows a defendant to 'defend' against a claim by asserting—up to the amount of the claim—the defendant's own claim against the plaintiff growing out of the same transaction." *Bolduc*, 167 F.3d at 672; *see also Emery*, 674 A.2d at 925 n.4 (" '[A] 'recoupment' is a reduction of part of the plaintiff's damages because of a right in the defendant arising out of the same transaction.' " (quoting *Inniss v. Methot Buick-Opel, Inc.*, 506 A.2d 212, 217 (Me. 1986))); *Dilorenzo Article*, 8 U. Miami Bus. L. Rev. at 224–25 (providing a definition of recoupment); Richard J. Wirth & Jonathan B. Alter, *Spousal Defenses Based in Equal Credit Laws*, 99 Com. L.J. 93, 100–01 (1994) (same). Additionally, the defense of recoupment survives as long as the cause of action upon the claim continues to exist. *In re Remington*, 19 B.R. at 720. This means, "a recoupment defense is not barred by the statute of limitations so long as the main action itself is timely." *Turner*, 659 A.2d at 225 (citing *United States v. Dalm*, 494 U.S. 596, 605, 110 S. Ct. 1361, 1366–67, 108 L. Ed. 2d 548, 559 (1990)). "Stated in another way, the defense of recoupment may be asserted even though the claim as an independent cause of action is barred by [the statute of] limitations." *In re Remington*, 19 B.R. at 720. The jurisdictions that favor this approach treat an ECOA violation asserted as an affirmative defense after the statute of limitations has run as being in the nature of a recoupment claim. *See, e.g., Notis*, 602 A.2d at 1165–66 (finding that defendant had sufficiently pled an ECOA affirmative defense in the nature of recoupment even though the specific word "recoupment" was not used). Thus, these jurisdictions reason the running of the statute of

limitations does not bar the assertion of an ECOA violation as an affirmative defense.

3. *Position #3: A debtor can assert an ECOA violation as an affirmative defense based on the defense of illegality.* Finally, several jurisdictions have allowed a plaintiff to assert an ECOA violation as an affirmative defense, even after the two-year statute of limitations has run for an offensive ECOA claim, based on the principle that a contract in violation of a statute is void and unenforceable. *See, e.g., Integra Bank/Pittsburgh*, 839 F. Supp. at 329 (stating "a creditor may not claim legal reliance on a signature that was illegally required in the first instance"); *Boone Nat'l Sav. & Loan Ass'n, F.A. v. Crouch*, 47 S.W.3d 371, 374–76 (Mo. 2001) (citing broad equitable principles when permitting defendant to assert an ECOA affirmative defense after the statutory period had run); *Eure v. Jefferson Nat'l Bank*, 448 S.E.2d 417, 421 (Va. 1994) (holding defendant was entitled to assert an ECOA violation as an affirmative defense to avoid only her liability because to do otherwise would be to enforce conduct that is forbidden by the ECOA).

The basis for this position is that the guaranty is a contract growing out of an illegal act and is contrary to public policy under both the ECOA and state law. *Eure*, 448 S.E.2d at 419–20. In reaching this conclusion, the Virginia Supreme Court relied on the Supreme Court opinion in *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 102 S. Ct. 851, 70 L. Ed. 2d 833 (1982), for the proposition that a violation of an act of Congress may be used defensively to avoid the obligation of a contract. *Id.* at 420.

*Kaiser Steel Corp.* involved purported violations of the Sherman Act and the National Labor Relations Act. *Kaiser Steel Corp.*, 455 U.S. at 78, 102 S. Ct. at 856–57, 70 L. Ed. 2d at 840. In *Kaiser Steel Corp.*, the

Supreme Court recognized that, " '[t]he authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract.' " *Id.* at 77, 102 S. Ct. at 856, 70 L. Ed. 2d at 839 (quoting *McMullen v. Hoffman*, 174 U.S. 639, 654, 19 S. Ct. 839, 845, 43 L. Ed. 1117, 1123 (1899)). Moreover, the court stated that the defense of illegality "should be entertained in those circumstances where its rejection would be to enforce conduct that the antitrust laws forbid." *Id.* at 81–82, 102 S. Ct. at 858–59, 70 L. Ed. 2d at 842. The Virginia Supreme Court in *Eure* also recognized that the Supreme Court in *Kaiser Steel Corp.* allowed the defense of illegality even though the Sherman Act and the NLRA already provided specific remedies for their violation and neither act contained explicit provisions permitting defensive use of a violation to avoid liability under a contract. *Eure*, 448 S.E.2d at 420. In allowing the defense of illegality in *Kaiser Steel Corp.*, the Supreme Court stated:

> Refusing to enforce a promise that is illegal under the antitrust or labor laws is not providing an additional remedy contrary to the will of Congress. A defendant proffering the defense seeks only to be relieved of an illegal obligation and does not ask any affirmative remedy based on the antitrust or labor laws. "[A]nyone sued upon a contract may set up as a defense that it is a violation of the act of Congress, and, if found to be so, that fact will constitute a good defense to the action."

*Kaiser Steel Corp.*, 455 U.S. at 81 n.7, 102 S. Ct. at 858 n.7, 70 L. Ed. 2d at 842 n.7 (quoting *E. Bement & Sons v. Nat'l Harrow Co.*, 186 U.S. 70, 88, 22 S. Ct. 747, 754, 46 L. Ed. 1058, 1067 (1902)). The Virginia Supreme Court concluded that this statement applied with equal force to a wife's use of an ECOA affirmative defense to avoid her liability under the guaranty she executed. *Eure*, 448 S.E.2d at 421.

**B. Analysis.** The district court decided this case by allowing Christine and Phyllis to assert Bank of the West's ECOA violations as affirmative defenses. The basis for allowing Christine and Phyllis to assert the bank's ECOA violations as affirmative defenses is that their unlimited personal guaranties arose out of an illegal act and enforcement would be contrary to public policy. *Eure*, 448 S.E.2d at 419–20.

It is well-established Iowa law that contracts made in contravention of a statute are void, and Iowa courts will not enforce such contracts. *Pike v. King*, 16 Iowa 49, 52 (1864). It is also well-established that this rule applies only to the parties to the illegality or those "so closely associated or connected therewith as to be held in law to be *in pari delicto.*" *George Birrell, Inc. v. Fid. & Cas. Co. of N.Y.*, 193 Iowa 860, 874, 188 N.W. 26, 32 (1922). A more recent application of these rules can be found in *Milholin v. Vorhies*, 320 N.W.2d 552 (Iowa 1982). There, a broker sought to enforce an oral listing agreement. *Milholin*, 320 N.W.2d at 553. We first determined that a rule promulgated by the Iowa Real Estate Commission requiring all listing agreements to be in writing was valid and had the force and effect of a statute. *Id.* at 553–54. We also noted the purpose of the rule was to protect the public by establishing fair dealings between parties, standardizing the procedure and practices in the real estate business, and preventing fraud. *Id.* at 554. Accordingly, in *Milholin*, we held an oral listing agreement is unenforceable upon proper objection, and we refused to enforce the oral listing agreement at issue in the case. *Id.* at 554–55.

We believe the same analysis applies to a violation of the ECOA. In the early 1970s, discriminatory credit practices were prevalent across the nation. The largest problem centered on the inability of women to obtain credit on the same basis as men. *Stafford Article,* 40 Okla. L. Rev. at

431. As a result, the ECOA was enacted in 1974 in response to testimony in the House of Representatives, "which described discrimination against credit applicants on the basis of characteristics, such as sex or marital status, which were unrelated to creditworthiness." Joseph J. Ziino, Jr., *A Review of the Federal Equal Credit Opportunity Act*, 27 Drake L. Rev. 1, 1 (1977). Moreover, because credit discrimination was not limited only to sex and marital status, in 1976, Congress expanded the ECOA to create a comprehensive credit discrimination statute. *Stafford Article*, 40 Okla. L. Rev. at 432. The gender-neutral language of the ECOA indicates that Congress chose to protect any applicant, regardless of gender, from discrimination by requiring that creditors treat all credit applicants in an identical manner. *Markham v. Colonial Mortgage Serv. Co.*, 605 F.2d 566, 569 (D.C. Cir. 1979). Congress gave the Board the duty to promulgate regulations to carry out the purpose of the Act. 15 U.S.C. § 1691b(a)(1). One such regulation provides a creditor cannot require the signature of an applicant's spouse or any other person if the applicant is individually creditworthy. 12 C.F.R. § 202.7(d).

Christine and Phyllis claim the reason they were required to guaranty Acme's loan was solely because they were the spouses of Randal and John, not because the other parties obligated in the transaction were not sufficiently creditworthy. If Christine and Phyllis were required to sign the guaranties solely because they were the spouses of Randal and John, and are then required to pay under these guaranties, the purpose of the act—that a creditor cannot require the signature of an applicant's spouse or any other person if the applicant is individually creditworthy—would be frustrated. *See* 15 U.S.C. § 1691(a)(1); 12 C.F.R. § 202.7(d).

Other reasons also lead us to the conclusion that Christine and Phyllis should be entitled to use the bank's violations of the ECOA as affirmative defenses. First, the threat of courts releasing guarantors from liability on guaranties obtained in violation of the ECOA will strongly deter creditors' discriminatory practices. *See* Andrea Michele Farley, *The Spousal Defense—A Ploy to Escape Payment or Simple Application of the Equal Credit Opportunity Act?*, 49 Vand. L. Rev. 1287, 1306–07 (1996) (noting that creditors will continue to violate the ECOA unless courts order remedies that command the attention of creditors and force them to take notice of the financial consequences). Second, equity should forbid creditors from benefiting from their discriminatory practices in violation of the ECOA. "Congress—in enacting the ECOA— intended that creditors not affirmatively benefit from proscribed acts of credit discrimination." *Integra Bank/Pittsburgh*, 839 F. Supp. at 329. Allowing creditors, especially institutions who are sophisticated in credit transactions, to benefit by their disregard of the requirements of the ECOA seriously undermines the Congressional intent to eliminate gender and marital status-based credit discrimination. *Id.* As a result, equity requires that:

> [A]n offending creditor should not be permitted to look for payment to parties who, but for the ECOA violation, would not have incurred personal liability on the underlying debt in the first instance. This rule places a creditor in no worse position than if it had adhered to the law when the credit transaction occurred. . . . [A] creditor may not claim legal reliance on a signature that was illegally required in the first instance.

*Id.*

Finally, allowing a debtor to assert a violation of the ECOA as an affirmative defense, even after the statute of limitations has run for an

offensive ECOA claim, best protects the victims of credit discrimination. Most debtors do not know about the provisions of the ECOA unless they have consulted an attorney. *In re Remington*, 19 B.R. at 720. If courts do not allow a debtor to use a violation of the ECOA as an affirmative defense, a creditor may take its chances and hope the debtor does not realize a violation has occurred until the two-year statute of limitations has run. *Id.*

Allowing Christine and Phyllis to assert violations of the ECOA as affirmative defenses is not only consistent with our law dealing with illegal contracts, but is also consistent with the public policy behind the enactment of the ECOA. If we do not allow this remedy after the expiration of the two-year statute of limitations, lenders would be free to violate the law if they waited two years before trying to enforce a credit agreement. Congress did not intend for lenders to avoid the consequences of the ECOA by the mere passage of time. Accordingly, we agree with the jurisdictions that allow a creditor to use a violation of the ECOA as an affirmative defense after the two-year statute of limitations has run. *See, e.g., Medmark, Inc.,* 897 F. Supp. at 514–15; *Eure,* 448 S.E.2d at 421. This position is consistent with Iowa law. Thus, the district court was correct when it allowed Christine and Phyllis to assert violations of the ECOA as affirmative defenses to void the obligations made in contravention of the ECOA.

**VI. Whether There Remains Disputed Material Facts as to Whether Bank of the West Violated the ECOA by Requiring Christine's and Phyllis's Personal Guaranties.**

In their motions for summary judgment, Christine and Phyllis claim the reason they were required to guarantee Acme's loan was solely that they were the spouses of Randal and John, not because the other

parties obligated in the transaction were not sufficiently creditworthy. Randal and John filed affidavits stating the facts contained in the statement of undisputed facts were true and correct. The facts supported by affidavits state the parties to this loan transaction, other than Christine and Phyllis, were qualified under any reasonable standard of creditworthiness for the amount and terms of credit requested. The facts supported by affidavits also state the only reason the bank sought the signatures of Christine and Phyllis was solely because they were the spouses of Randal and John respectively. Additionally, in an answer to an interrogatory attached to the bank's motion for summary judgment, Randal and John stated that a representative of the bank told Randal, at the time the bank requested his spouse's guaranty, that the bank requested the guaranty solely because they were married and that her assets were not necessary to secure the loan. Finally, the facts supported by the affidavits state the loan officer who arranged the transaction told Randal and John that it was the bank's policy to require the signatures of spouses of the principal shareholders of a corporation on the loan documents.

In response to the motion, the bank filed a resistance. In its resistance, the bank claimed the issue of whether the lender violated the ECOA is a question of law. The first question of law the court had to answer was whether Christine and Phyllis were applicants under the ECOA. The second question of law the court needed to decide was whether the statute of limitations precluded Christine and Phyllis from asserting ECOA violations. The bank did not file any pleadings or affidavits concerning the issue of whether Acme and/or Christine's and Phyllis's spouses were not sufficiently creditworthy so as to entitle the bank to obtain Christine's and Phyllis's unlimited personal guaranties.

The district court answered the legal questions raised by the bank by ruling Christine and Phyllis can assert ECOA violations against the Bank. The court also held that although the statute of limitations precluded an offensive action for damages under the ECOA, Christine and Phyllis could use violations of the act as affirmative defenses. The court then relied on the affidavits, determined there were no genuine issues of material fact as to why the bank required the guaranties, and found the bank required the guaranties in violation of the ECOA. We agree with the district court that at the time it entered its ruling on the motions for summary judgment, the affidavits showed no genuine issue of material fact existed as to the bank requiring Christine and Phyllis to guarantee Acme's loan solely because they were the spouses of Randal and John, not because the other parties obligated in the transaction were not sufficiently creditworthy.

After the court filed its ruling, the parties were unclear as to whether this ruling ended the litigation against Christine and Phyllis. Both parties filed motions to enlarge and amend the ruling. The bank also filed a trial brief, raising the creditworthy issue for the first time. The bank did not file any affidavits supporting its creditworthy argument. The court amended its ruling, making it clear that it granted Christine's and Phyllis's motions for summary judgment and dismissed the bank's actions against them.

On appeal, the bank alleges a genuine issue of material fact existed as to the creditworthy issue. The flaw in the bank's argument is that it never raised the creditworthy issue in any resistance to the motions for summary judgment or filed any affidavits disputing the facts contained in the affidavits filed on behalf of Christine and Phyllis prior to the court entering its original ruling on the motions for summary judgment.

Although the bank did raise the creditworthy issue in its trial brief, the bank filed its trial brief after the court took the motions for summary judgment under advisement and filed its original ruling. Moreover, the bank never presented any affidavits showing a genuine issue of material fact exists as to the issue of creditworthiness in connection with its trial brief.

Our rules of civil procedure require that when a motion for summary judgment is filed and supported by affidavits, the resisting party "may not rest upon the mere allegations or denials in the pleadings, but the response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Iowa R. Civ. P. 1.981(5). If the resisting party chooses to file affidavits supporting his or her resistance, the party must file the affidavits with the resistance. Iowa R. Civ. P. 1.981(3). The bank never complied with these rules. Instead, the bank sought to rest on its claims that the application of the ECOA was purely a legal question. To resist Christine's and Phyllis's motions for summary judgment on the issue of creditworthiness, the bank was required to set forth specific evidentiary facts showing the existence of a genuine issue of material fact. *Bauer v. Stern Fin. Co.*, 169 N.W.2d 850, 853 (Iowa 1969). It failed to do so. Therefore, we affirm the district court's judgment granting Christine's and Phyllis's motions for summary judgment.

## VII. Disposition.

We affirm the judgment of the district court granting Christine's and Phyllis's motions for summary judgment because they were entitled to assert violations of the ECOA as affirmative defenses and no genuine issue of material fact exists as to the creditworthiness issue raised by Bank of the West on appeal.

**AFFIRMED.**